716 A.2d 580

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Mark Newtown SPOTZ, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 23, 1997.

Decided July 20, 1998.

500

502

Kent D. Watkins (Direct), St. Clair, Harry A. Rubright (Collateral), Frackville, for M. Spotz.

Claude A.L. Shields, Pottsville, Robert A. Graci, Atty. General's Office, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

Following a jury trial, Appellant Mark Spotz was found guilty of first degree murder for the killing of June Ohlinger. The jury returned a verdict of death, and on March 6, 1996, the trial court formally imposed the death sentence. Appellant filed post-sentence motions which the trial court denied. This direct appeal followed.[1] For the reasons presented herein, we affirm the judgment of sentence.

■ Petitioner initially contends that the verdict of first degree murder was not supported by the evidence and was against the weight of the evidence. As in all cases in which the death penalty has been imposed, this Court is required to independently review the record to determine whether the evidence is sufficient to sustain the verdict for murder of the first degree. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26, n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In conducting such a review, we must view the evidence admitted at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner, and determine whether the jury could find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Michael,* 544 Pa. 105, 109–12, 674 A.2d 1044, 1047 (1996).

■ Evidence is sufficient to sustain a conviction for first degree murder where the Commonwealth establishes that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing and that the killing was deliberate. 18 Pa.C.S. § 2502(d); *Commonwealth v. Rios,* 546 Pa. 271, 281, 684 A.2d 1025, 1030 (1996), *cert. denied,* ─── U.S. ───, 117 S.Ct. 1825, 137 L.Ed.2d 1032 (1997). A specific intent to kill may be proven by circumstantial evidence, and therefore, may be inferred from the defendant's use of a deadly weapon upon a

---

1. Pursuant to 42 Pa.C.S. § 9711(h), this Court has automatic jurisdiction to review the trial court's judgment of a sentence of death.

vital part of the victim's body. *Id.; Commonwealth v. Bond,* 539 Pa. 299, 305, 652 A.2d 308, 311 (1995).

■■ At the same time, a defendant's request for a new trial based on the argument that the verdict was against the weight of evidence will only be granted when the verdict is so contrary to the evidence as to shock one's sense of justice. *Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 672 (1985). Unless there are facts and inferences of record that disclose a clear abuse of discretion, the trial court's ruling that a verdict was not against the weight of the evidence must stand. *Commonwealth v. Brown,* 538 Pa. 410, 436, 648 A.2d 1177, 1189 (1994).

Viewed under these standards, the record below establishes that on January 31, 1995, Appellant and his girlfriend at the time, Christina Noland, were staying in Clearfield County at the home of Appellant's mother and step-father, Jean and Daryl Newpher. Appellant's brother, Dustin Spotz, and Dustin's fiancée and her son were also in the home. That evening, a fight developed between Appellant and his brother, Dustin. During the fight, Dustin stabbed Appellant twice in the back with a kitchen knife. In response, Appellant ran upstairs, retrieved a .9 mm handgun, returned to the kitchen and shot his brother. Although Dustin's fiancé tried to call the police, Appellant grabbed the phone and declared that no one could call anyone until he had gotten away. Appellant then put the handgun in his pants and fled the house with Noland in a vehicle driven by his step-father.[2]

After getting dropped off at Appellant's friend's house, Appellant and Noland got a ride to a truck stop in Pine Grove, Schuylkill County, where Appellant had previously worked. At the truck stop, Appellant encountered a friend who gave him and Noland a ride into Pine Grove Borough, dropping them off on the main street of town. At this point, it was around 2:30 to 3:00 a.m. on February 1, and Appellant and Noland were without any money or a car. They walked up

---

2.   Dustin Spotz later died from the gunshot wound.

the street to a hotel looking for a car to steal, but were unsuccessful.

Appellant and Noland then walked to the Harris Mini–Mart. By this time, it was approximately 5:30 a.m., and June Ohlinger, a Mini–Mart employee, was arriving in her car to open the store. Appellant approached Mrs. Ohlinger with his gun drawn and ordered her to the passenger side. Noland got in the back of the car and Appellant then drove to a secluded area, asking Mrs. Ohlinger such questions as what time she opened the store and what time she usually saw her husband. Handing the gun to Noland, Appellant then removed Mrs. Ohlinger's jewelry and money. Appellant took back the gun, ordered Mrs. Ohlinger out of the car, and forced her to stand on the side of a roadway bridge. Appellant then shot her in the back of the head and kicked her body over the bridge into the creek below.

Appellant and Noland then drove Mrs. Ohlinger's car to a car wash in Schuylkill County, removed certain items from the car, and then traveled south to Rehoboth Beach, Delaware and then into Maryland. During the trip, Noland cut and dyed her hair.

Appellant and Noland then drove to York County, where Appellant and Noland became separated. Noland was left with Mrs. Ohlinger's car. On February 3, Appellant was arrested at a motel in Carlisle, Pennsylvania. Appellant was charged with numerous offenses, including aggravated assault (18 Pa.C.S. § 2702), kidnapping (18 Pa.C.S. § 2901), robbery of a motor vehicle (18 Pa.C.S. § 3702), robbery (18 Pa.C.S. § 3701), theft by unlawful taking (18 Pa.C.S. § 3921), criminal conspiracy (18 Pa.C.S. § 903) and murder in the first degree (18 Pa.C.S. § 2502(a)). Noland, meanwhile, abandoned Mrs. Ohlinger's car and traveled to Altoona by bus. Eventually, Noland surrendered to the Altoona police, with Mrs. Ohlinger's rings still in her possession.

At Appellant's trial, Noland testified against Appellant, describing the events above and identifying Appellant as the

one who shot Mrs. Ohlinger.[3]   One of the police officers who arrested Appellant, State Trooper Joseph Kalis, testified that the police recovered a .9 mm handgun and full metal jacket ammunition from the motel at the time of Appellant's arrest. State Trooper Chester Zalegowski testified that Appellant's fingerprints were found on certain items inside Mrs. Ohlinger's car, which had been recovered by police in York County. Another witness for the Commonwealth, Juan Maldonado, testified that he saw Appellant in Harrisburg on February 2, 1995, at which time Appellant told him that he was wanted on a homicide charge in Schuylkill County and showed Mr. Maldonado a .9 mm handgun.   The Commonwealth also offered the testimony of Dustin Spotz's fiancée and her son who testified about the events surrounding the shooting of Dustin Spotz in Clearfield County on the evening of January 31, 1995.

On March 4, 1996, the jury found Appellant guilty of first-degree murder, aggravated assault, kidnapping, robbery of a motor vehicle, robbery, theft by unlawful taking and criminal conspiracy.   After a penalty hearing, the jury found that there were one or more aggravating circumstances which outweighed any mitigating circumstances.[4]   The jury therefore returned a verdict of death for the murder conviction, which the trial court formally imposed on March 6, 1996.   For the other offenses, Appellant was sentenced to a total term of fourteen and one-half to twenty-nine years of imprisonment to be served consecutive with the sentence imposed for the killing of Dustin Spotz.

3.  Noland was also charged with criminal homicide, robbery, conspiracy, and related offenses in connection with the crimes committed against Mrs. Ohlinger.   At trial, it was established that these charges remained pending against Noland and that the Commonwealth had not offered her a deal in exchange for her testimony against Appellant.

4.  The aggravating circumstances were that the killing was committed in the perpetration of a felony (42 Pa.C.S. § 9711(d)(6));   that the defendant has a significant history of felony convictions involving the use or threat of violence to the person (42 Pa.C.S. § 9711(d)(9));   and that the defendant has a conviction of voluntary manslaughter committed either before or at the time of the offense at issue (42 Pa.C.S. § 9711(d)(12)).   The mitigating circumstance was that the defendant had a dysfunctional home (42 Pa.C.S. § 9711(e)(8)).

In his first claim of error, Appellant specifically argues that there was insufficient evidence to establish that he had a specific intent to kill, a finding necessary to sustain his conviction for first degree murder. Appellant contends that the only evidence offered by the Commonwealth was the testimony of Christina Noland, the person whom Appellant attempted to portray as the actual shooter. Therefore, Appellant appears to maintain that the evidence could only show him to be an accomplice and thus, there can be no liability for first-degree murder unless he shared Noland's specific intent to kill.[5] We disagree.

In the first instance, it is well settled that issues of credibility are for the jury to resolve. *Commonwealth v. Fahy*, 512 Pa. 298, 308, 516 A.2d 689, 694 (1986). Here, Christina Noland testified that Appellant was the one who shot Mrs. Ohlinger in the back of the head. The jury, as the finder of fact, was free to believe all, part or none of Noland's testimony.[6] *Id.* At the same time, the jury was free to disbelieve the evidence proffered by Appellant purporting to

5. As with many of the arguments presented in this appeal, Appellant's argument on this issue is undeveloped and unclear. However, in relation to the instant claim, as required in death penalty cases, we must independently review the record in each case to determine whether the evidence sufficiently supports the verdict for first-degree murder. *See Zettlemoyer, supra.* As to Appellant's other claims which are unclear, this Court has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief. *See Commonwealth v. LaCava*, 542 Pa. 160, 188, 666 A.2d 221, 235 (1995) (failure to sufficiently explain claim waives consideration of claim since this Court will not make an appellant's arguments for him); *Commonwealth v. Ragan*, 538 Pa. 2, 37, 645 A.2d 811, 828 (1994) (failure to elaborate on mere assertion renders the claim waived); *Commonwealth v. Jackson*, 494 Pa. 457, 459 n. 1, 431 A.2d 944 n. 1 (1981) (appellate claim waived for lack of argument). However, given the relaxation of waiver rules in death penalty cases, we will not decline to review Appellant's arguments, even though not thoroughly presented, on the merits. *See Zettlemoyer*, 500 Pa. at 50 n. 19, 454 A.2d at 955 n. 19.

6. Moreover, contrary to Appellant's assertions, the Commonwealth presented evidence other than Noland's testimony, including testimony from Juan Maldonado regarding Appellant's admissions, to support a finding that Appellant was actually the person who shot Mrs. Ohlinger.

show that Noland was the trigger person.[7] Clearly, the firing of a weapon at a vital part of Mrs. Ohlinger's body, the back of her head, demonstrates Appellant's specific intent to kill Mrs. Ohlinger.

Moreover, even assuming the jury disbelieved Noland's testimony that Appellant was the one to actually pull the trigger, as Appellant seems to argue, we agree with the trial court that there was sufficient evidence to support Appellant's conviction of first degree murder as an accomplice. It is well established that an accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense. *Commonwealth v. Cox,* 546 Pa. 515, 529, 686 A.2d 1279, 1286 (1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 567, 139 L.Ed.2d 407 (1997). Because the crime involved in this case is first-degree murder, in order to sustain a conviction via accomplice liability, the Commonwealth's evidence must be sufficient to establish that Appellant possessed a specific intent to facilitate the crime at issue, i.e. first degree murder. *See Commonwealth v. Bachert,* 499 Pa. 398, 406–07, 453 A.2d 931, 935–36 (1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983) (evidence sufficiently supports verdict for first degree murder where it is reasonable for jury to infer that defendant's participation was with intent of facilitating commission of the murder). Such a shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances. *Id.*

7. At trial, Appellant presented evidence of writings by Noland which referred to herself and Appellant as "natural born killers" and also presented the testimony of a person in the same jail with Noland after her arrest, who claimed that Noland admitted to having killed someone. As the trial court noted, and the record reflects, the thrust of Appellant's argument was that it was Noland who did the shooting. However, it is well settled that a mere conflict in the testimony does not render the evidence insufficient because it is within the province of the fact finder to determine the weight to be given to the testimony. *Commonwealth v. Pierce,* 446 Pa. 479, 483, 288 A.2d 807, 809 (1972).

Here, the evidence revealed that Appellant and Noland cooperated together in driving Mrs. Ohlinger to the secluded area where she was shot. It was Appellant who asked her questions clearly designed to determine how long it would be before her absence would be discovered and it was Appellant who had the gun. Given this evidence, the jury could reasonably have concluded that Appellant's participation was, at a minimum, with the intent of facilitating the commission of Mrs. Ohlinger's murder. Thus, we conclude that Appellant's challenge that the evidence was insufficient to establish the requisite specific intent is without merit.

Further, based upon our independent review of the record, we are satisfied that sufficient evidence was produced at trial from which the jury could have found each element of an intentional killing beyond a reasonable doubt. *See* 18 Pa.C.S. § 2502(a), (d) (1983). Moreover, given the facts in evidence in this case, this is not a verdict which shocks one's sense of justice. Therefore, we reject Appellant's contention that the jury's verdict of murder in the first degree was against the weight of the evidence.

Next, Appellant argues that the trial court erred in allowing evidence of the shooting of his brother to be introduced into this trial to show Appellant's motive for committing the crimes against Mrs. Ohlinger. We disagree.

Unquestionably, the admission of prior crimes evidence is a matter vested in the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court abused its discretion. *Commonwealth v. Seiders*, 531 Pa. 592, 596, 614 A.2d 689, 691 (1992). While evidence of a defendant's prior criminal activity is generally inadmissible, this Court has recognized that there are certain exceptions to the rule. *Commonwealth v. Walker*, 540 Pa. 80, 97, 656 A.2d 90, 99 (1995), *cert. denied*, 516 U.S. 854, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995). For example, evidence of prior criminal activity may be admitted if introduced to show motive, intent, absence of mistake or accident, a common scheme or identity. *Commonwealth v. Donahue*, 519 Pa. 532, 541, 549

A.2d 121, 125 (1988). Furthermore, evidence of another crime may also be introduced where such evidence was part of the chain or sequence of events which became part of the history of the case in question and formed part of the natural development of the facts. *Commonwealth v. Lark,* 518 Pa. 290, 303, 543 A.2d 491, 497 (1988). When one of these exceptions applies, however, the trial court must still balance the relevancy and evidentiary need for the other crimes evidence against its prejudicial effect and may still exclude the evidence if the probative value is outweighed by the possibility of unfair prejudice. *Id.; Commonwealth v. Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981).

While the trial court in the instant matter prohibited the Commonwealth from introducing evidence that Dustin Spotz had actually been killed, since Appellant was not aware of his death at the time he went on the run, the trial court found that the evidence of the shooting and Appellant's flight to the Pine Grove area was properly admitted to show Appellant's motive for shooting Mrs. Ohlinger to get her car and money.[8] In order for evidence to be admissible for purposes of showing motive, however, this Court has stated that the evidence of the other crime must provide sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of circumstances. *Commonwealth v. Martin,* 479 Pa. 63, 69, 387 A.2d 835, 838 (1978) (evidence that thirteen days before killing, victim attempted to stop defendant from robbing another person was admissible to show motive). Here, contrary to Appellant's assertions that there is absolutely no connection between the two crimes, the record discloses that the evidence clearly provided sufficient ground to establish that the murder of Mrs. Ohlinger, and the theft of her property, grew out of and was related to the crime involving Dustin Spotz in Clearfield

8. However, the trial court denied the Commonwealth's motion to admit evidence that Appellant was on parole for prior felony convictions at the time of the shooting, as well as evidence related to the shootings of Penny Gunnett in York County on February 2, 1995, and Betty Amstutz in Cumberland County on February 3, 1995, allegedly committed by Appellant.

County. Since the evidence of the shooting was used to show that Appellant was in flight from the police, without money or a car, at the time he encountered, robbed and killed Mrs. Ohlinger, it is clear that the criminal activity in Clearfield County was causally connected to the subsequent chain of events in Schuylkill County. Therefore, we find that the evidence of the shooting of Dustin Spotz and Appellant's subsequent flight was clearly relevant to the issue of Appellant's motive for robbing and killing Mrs. Ohlinger.

Appellant further argues, however, that this evidence was unduly prejudicial since it was presented solely to show his propensity for committing criminal acts. Again, we disagree.

As noted above, the challenged evidence was introduced, not to show Appellant's propensity for committing crimes, but as evidence of Appellant's motive for committing the crimes against Mrs. Ohlinger. Moreover, in balancing the competing interests involved in the instant matter, the trial court concluded that the probative value of the evidence relating to motive outweighed its tendency to prejudice the jury against Appellant. We find no abuse of discretion in this decision. *See Commonwealth v. Tedford,* 523 Pa. 305, 329–30, 567 A.2d 610, 621–22 (1989) (evidence that defendant was on work release from prison when he killed victim was not unduly prejudicial, and was therefore admissible to establish defendant's motive for killing victim to avoid capture by police); *Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977) (in deciding admissibility of other crimes evidence, trial court should determine whether evidentiary value of evidence is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial).

Furthermore, we note that the jury here was repeatedly instructed to consider the evidence of the Clearfield County crimes for the sole purpose of showing Appellant's motive for committing the Schuylkill County crimes and not for purposes of determining guilt or innocence in the Schuylkill County crimes. *See Commonwealth v. Steele,* 522 Pa. 61, 78, 559 A.2d 904, 913 (1989) (jury presumed to follow trial court's instruc-

tions); *Commonwealth v. Claypool,* 508 Pa. 198, 206, 495 A.2d 176, 179–80 (1985) (trial court did not err in admitting other crime evidence when probative value of evidence outweighed undue prejudice and its admission was accompanied by cautionary instructions explaining limited purpose for which evidence could be considered). Accordingly, this claim offers no basis for relief.

In a related argument, Appellant contends that the admission of evidence of the Clearfield County crime was prejudicial because the only other evidence inculpating Appellant was the testimony of the alleged accomplice, Christina Noland. As such, Appellant argues that evidence of the Clearfield County shooting was improperly admitted only to prejudice Appellant and to bolster the testimony of Noland. This argument also fails.

First, we again point out that, contrary to Appellant's assertions, the testimony of Noland was not the only evidence offered by the Commonwealth to demonstrate Appellant's guilt. Rather, the Commonwealth introduced evidence such as the discovery of Appellant's fingerprints on items in Mrs. Ohlinger's vehicle, his presence in the area of the murder scene and his admission made in Harrisburg to the Commonwealth's witness, Juan Maldanado, to the effect that he had killed someone in Schuylkill County. Furthermore, as noted previously, the evidence of the Clearfield County shooting was properly admitted for the purpose of establishing Appellant's motive for robbing and shooting Mrs. Ohlinger. Accordingly, this claim is rejected.

Appellant next asserts that the trial court erred in charging the jury under the accomplice liability theory of murder when the Commonwealth only charged and presented evidence establishing him as a principal. We disagree.

A defendant may be convicted as an accessory though only charged as a principal. *Commonwealth v. Perkins,* 485 Pa. 286, 290–92, 401 A.2d 1320, 1322 (1979) (equally divided court) (affirming conviction based on accomplice liability where information charged defendant as principal); *Common-*

*wealth v. Potts,* 388 Pa.Super. 593, 566 A.2d 287 (1989) (Commonwealth's failure to proceed on theory of accomplice liability does not later preclude defendant's conviction under this theory). As long as the defendant is put on notice that the Commonwealth may pursue theories of liability that link the defendant and another in commission of crimes, the defendant cannot claim that the Commonwealth's pursuit of such a theory surprised and prejudiced the defendant. *Potts,* 388 Pa.Super. at 604, 566 A.2d at 293; *Commonwealth v. Smith,* 334 Pa.Super. 145, 150–51, 482 A.2d 1124, 1126 (1984) (despite being charged only as principal, defendant had sufficient notice of potential for accomplice liability theory, and trial court properly instructed jury on accomplice liability, when evidence adduced at trial supported accomplice theory, defendant attempted to transfer criminal liability to other person and Commonwealth had not misled defendant); *Commonwealth v. McDuffie,* 319 Pa.Super. 509, 466 A.2d 660 (1983).

Although Appellant asserts that he was surprised and prejudiced by the court's accomplice liability charge, the record demonstrates that Appellant had sufficient notice that an accomplice liability theory was possible. In the first instance, it was counsel for Appellant who raised the issue of accomplice liability during his cross examination of Christina Noland and pursued the theory that it was Christina Noland, and not Appellant, who had been the trigger person. *See Potts,* 388 Pa.Super. at 605, 566 A.2d at 293 (trial counsel not ineffective for failing to object to trial court's mention of accomplice liability theory when defendant's counsel made remarks implying Commonwealth could pursue conviction under such theory). Moreover, the Commonwealth not only openly admitted Noland's participation with Appellant in the commission of crimes against Mrs. Ohlinger but even outlined Noland's involvement in its opening statement. *Id.* at 605, 566 A.2d at 293 (opening statements by Commonwealth that defendant, charged only as principal, and another acted together put defendant on notice that accomplice liability theory was possible). Given that Appellant's counsel raised the issue of accomplice liability, thereby precluding allegations by Appellant of

surprise and prejudice, and that there was ample evidence in the record concerning the collusive nature of Noland's and Appellant's actions, the Commonwealth was entitled to a proper jury instruction on the accomplice liability theory. *Commonwealth v. Browdie,* 543 Pa. 337, 348, 671 A.2d 668, 673 (1996) (particular jury instruction only warranted when there is evidence to support such instruction); *Commonwealth v. Harper,* 442 Pa.Super. 553, 558, 660 A.2d 596, 598 (1995) (trial court must charge the jury in a manner supported by the evidence).

■■■ Alternatively, Appellant argues that the charge to the jury regarding accessory liability, even if justified, was improper. Specifically, Appellant claims that the charge failed to adequately inform the jury that in order to convict him of first degree murder on an accomplice liability theory, the jury was required to find that Appellant himself harbored the specific intent to kill. We find no merit to Appellant's argument.

The trial court gave the following instruction to the jury regarding accomplice liability:

[A defendant] is an accomplice if with the intent of promoting or facilitating the commission of the crime he solicits, commands, encourages or requests the other ' person to commit it, or he aids, agrees to aid or attempts to aid the other person in planning or committing the crime. . . . I want to stress for you that with respect to the charge of first degree murder, if you were going to find the defendant guilty of that charge based on him being an accomplice of someone else committing, you have to be convinced beyond a reasonable doubt that he had the specific intent to aid or abet someone else in killing June Ohlinger. Remember, that's the charge that requires specific intent. . . . In other words, if he is the one that actually committed the crime or he aided or abetted someone else in doing it and encouraged them to do it, you could find him guilty on either direct responsibility or as an accomplice, but the Commonwealth still has the duty of proving beyond a reasonable doubt that he had the requisite intent to commit these crimes or to

help someone else to do it. In respect to first degree murder, you have to be convinced beyond a reasonable doubt that he had the specific intent to help someone to kill June Ohlinger.

N.T. at 789–90.

Appellant argues that this portion of the charge misinforms the jury that they were only required to find that he had a specific intent "to help" kill, as opposed to a specific intent "to kill." In support of his argument, Appellant cites *Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961 (1994). The charge in *Huffman,* however, incorrectly advised the jury that they could find the defendant guilty of first degree murder if either he or his co-conspirator possessed the necessary specific intent to kill. In contrast to *Huffman,* the charge in the instant case correctly stated the law as to the liability of an accomplice in the commission of the crime. *See Commonwealth v. Thompson,* 543 Pa. 634, 645, 674 A.2d 217, 222 (1996) (jury charge regarding accomplice liability which provided that "he's an accomplice if with the intent to promote or facilitate the commission of the crime he . . . aids or attempts to aid the other person in committing it" was a correct statement of law). Although Appellant also cites *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982), to contest the propriety of this instruction, *Bachert* actually undermines Appellant's argument. *Bachert* reiterates the principle that in order to be liable under an accomplice theory, a defendant must have possessed the intent to promote or facilitate ("help") the commission of the offense. *Bachert,* 499 Pa. at 407, 453 A.2d at 936.

We also note that the portion of the charge relating to accomplice liability followed, and referred back to, the trial court's explanation of first degree murder, where the jury was specifically instructed that in order to convict Appellant of first degree murder, they must be satisfied that Appellant had a specific intent to kill June Ohlinger.[9] Since the jury was

9. The judge charged the jury as follows: "First degree murder is a murder in which the killer has a specific intent to kill. You may find the defendant guilty of first degree murder if you are satisfied beyond a

clearly guided as to the mental state required for accomplice liability, this claim offers Appellant no basis for relief.

Appellant next asserts that the trial court erred in denying Appellant's motion to compel consolidation of his case with that of his alleged accomplice, Christina Noland. Again, we disagree.

Pursuant to Pa. R.Crim. P. 1127(A)(2), defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act. Pa. R.Crim. P. 1127(B) sets forth the procedure for consolidating cases. Section (B)(1) of the Rule requires the Commonwealth to give written notice to the defendant that "offenses or defendants" charged in separate informations will be tried together. Pa. R.Crim. P. 1127(B)(1). Section (B)(2), meanwhile, provides that when the Commonwealth does not move for consolidation pursuant to (B)(1) "any" party may move to consolidate "separate indictments or informations." Pa. R.Crim. P. 1127(B)(2).

Pa. R.Crim. P 2 directs that the Rules of Criminal Procedure be construed in consonance with the rules of statutory construction. One fundamental maxim of statutory construction, "expresio unius est exclusio alterius," stands for the principle that the mention of one thing in a statute implies the exclusion of others not expressed. *Windrim v. Nationwide Insurance Co.*, 537 Pa. 129, 139, 641 A.2d 1154, 1159 (1994) (Cappy, J., concurring); *Samilo v. Commonwealth*, 98 Pa. Cmwlth. 232, 510 A.2d 412, 413 (1986). Similarly, the court may not supply omissions in the statute when it appears that the matter may have been intentionally omitted. *Kusza v. Maximonis*, 363 Pa. 479, 482, 70 A.2d 329, 331 (1950).

Applying these principles of statutory interpretation to Pa. R.Crim. P. 1127(B), we agree with the trial court that the Rule is intended to provide greater authority to the

reasonable doubt that the following three elements have been proven. First, that June Ohlinger is dead. Second, that the defendant killed her, and third, that the defendant did so with a specific intent to kill and with malice." (N.T. at 780).

Commonwealth in moving for consolidation of cases than is provided to an individual defendant. Section (B)(1) of the Rule specifically states that the Commonwealth may give notice of its intention to consolidate "offenses or defendants" while section B(2) permits any other party to move for consolidation only of "separate indictments or informations." Since "defendants" is not included in section B(2), we find that the trial court properly determined that Pa. R.Crim. P. 1127, the rule governing consolidation of cases, does not provide a criminal defendant with the right to compel the Commonwealth to consolidate his case with that of another defendant against whom similar charges are pending.[10]

This determination is supported not only by the principles of statutory construction, but also by the inherent, discretionary powers left to the district attorney, including the discretion as to which individuals shall be prosecuted and which shall not. *See Hearn v. Myers,* —— Pa.Super. ——, 699 A.2d 1265, 1267 (1997) (district attorney is afforded the power to decide whether and when to prosecute); *Commonwealth v. Malloy,* 304 Pa.Super. 297, 302, 450 A.2d 689, 692 (1982) (decision of whether or when to bring particular defendant to trial is matter within prosecutor's discretion). Since there is no procedure available by which a criminal defendant can compel the consolidation of separate defendants, we find that the trial court properly denied Appellant's motion to compel consolidation of his case with Christina Noland's.

**10.** We also note that the parties do not cite, nor does research indicate, any Pennsylvania case which addresses the particular issue raised by Appellant. Rather, as the lower court noted in its February 1, 1996 opinion denying Appellant's pre-trial motion to compel consolidation, all available case law addressing questions of consolidation and severance discuss the issues in the context of a notice for consolidation filed by the Commonwealth and a motion for severance on behalf of the defendant. However, in support of his position, Appellant appears to argue that a plurality of this Court's holding in *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973), should apply to his claim involving a defendant's motion to compel consolidation of his case with his co-defendant. *Peterson,* however, does not address the issue raised by Appellant. There, a plurality of this Court held that the trial court may order two or more indictments against the same defendant to be tried together if the offenses could have been joined in a single indictment. *Id.* at 192, 307 A.2d at 266–67.

In his next claim of error, Appellant argues that the trial court erred in admitting evidence of the Clearfield County shooting to introduce the .9 mm handgun recovered from Appellant at the time of his arrest. In essence, Appellant complains that the handgun was improperly admitted due to the Commonwealth's failure to offer sufficient evidence to establish that the handgun admitted at trial was positively linked to either the Clearfield or Schuylkill County shootings. Although Appellant failed to make a timely objection to the introduction of the handgun, arguably waiving this issue, we nonetheless find that this claim is without merit.

As Appellant concedes, the Commonwealth need not establish that a particular weapon was actually used in the commission of a crime in order for it to be introduced at trial. *Commonwealth v. Thomas*, 522 Pa. 256, 273, 561 A.2d 699, 707 (1989). Rather, the Commonwealth need only show sufficient circumstances to justify an inference by the finder of fact that the particular weapon was likely to have been used in the commission of the crime charged. *Id.* The admission of such evidence is a matter within the sound discretion of the trial court, and absent an abuse of such discretion, the trial court's decision to admit the evidence must stand. *Commonwealth v. Ford*, 451 Pa. 81, 85, 301 A.2d 856, 857–58 (1973) (stating that weapon found in the possession of the accused at the time of his arrest, although not identified as the weapon actually used in the crime on trial, is admissible where the circumstances justify an inference of the likelihood that the weapon was used in the crime).

Appellant, however, alleges that the Commonwealth, by failing to offer direct testimony that the .9 mm handgun recovered at Appellant's arrest could have caused the fatal gunshot wound to Mrs. Ohlinger, failed to lay the foundation required by *Thomas* for the admission of the handgun. We disagree.

In the first instance, Noland testified that Appellant still had the gun used to shoot Dustin Spotz in Clearfield County once they arrived in the Pine Grove area. Additionally, Juan

Maldanado testified that Appellant, after revealing that he was wanted for a homicide in Schuylkill County, showed him a .9 mm handgun that he was carrying. Moreover, Dr. Bindie, who performed the autopsy of Mrs. Ohlinger, testified that it was his conclusion that a full metal jacket bullet, the same type of bullet found in the motel room where Appellant was arrested, had been used to· kill Mrs. Ohlinger. Further, in direct contradiction to Appellant's assertion that no evidence showed that the gun retrieved at Appellant's arrest was the gun used to shoot Dustin Spotz, the state police ballistics expert specifically testified that the bullets from Clearfield County had been discharged from the .9 mm handgun recovered from Appellant at his arrest.

Since the record clearly allowed for the jury to infer that the .9 mm handgun recovered from the motel at the time of Appellant's arrest was the weapon used to murder Mrs. Ohlinger, we find that the trial court did not abuse its discretion in admitting the handgun into evidence.

Next, Appellant apparently argues that the trial court erred in its charge to the jury regarding conspiracy by asking the jury to determine which crimes Appellant conspired to commit, even though a conspiracy to commit several crimes is only one criminal conspiracy. This claim also fails.

In the first instance, the record reflects that prior to closing arguments, the trial court explained to both counsel that the jury would be asked, if they found Appellant guilty of conspiracy, to indicate what crime it is that they found Appellant conspired to commit. The court further explained that this would be done for sentencing purposes. When asked whether counsel had any objection to this instruction, defense counsel specifically stated that he had no objection. (N.T. at 693). Thereafter, defense counsel did not object either when the trial court proceeded to give these instructions to the jury before deliberations began or again when responding to the jury's request for supplemental instructions on the criminal conspiracy charge. (N.T. at 804, 808). Given Appellant's failure to object to this instruction when given, the issue has not properly been preserved for appeal. *See* Pa. R.Crim. P.

1119(b); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974) (allegations of error in the trial court's instructions will not be considered on appeal absent an objection at trial).

Nonetheless, in light of our practice to relax waiver rules in capital cases, *see Zettlemoyer*, 500 Pa. at 50 n. 19, 454 A.2d at 955 n. 19, we have also reviewed Appellant's argument on the merits and in doing so, conclude that this claim fails. While Appellant's contention that conspiracy is not severable as to diverse crimes contemplated by a single agreement may be a correct statement of law, *see Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), Appellant fails to demonstrate how he may have been prejudiced by the court's instruction.[11] The Commonwealth alleged only one conspiracy encompassing the commission of several crimes as its object, and Appellant was sentenced for only one conspiracy. Since Appellant has not shown that he was harmed by the trial court's instructions, agreed to by defense counsel, this claim does not afford Appellant a basis for relief. *See Commonwealth v. Lambert*, 529 Pa. 320, 338, 603 A.2d 568, 577 (1992) (no relief due where defendant failed to establish that he was prejudiced by challenged jury instructions).

Appellant next complains that there was insufficient evidence to establish the crime of conspiring to commit first degree murder. Specifically, Appellant argues that the Commonwealth offered no evidence to suggest that there was an agreement between him and Noland to kill Mrs. Ohlinger. This claim is without merit.

Generally, a conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. *Commonwealth v. Rios*, 546

11. Appellant seems to argue that this instruction confused the jury and therefore, that the jury did not understand the difference between a charge based on criminal conspiracy and one based on accomplice liability. However, each charge gave a correct statement of the applicable law. Appellant then once again revisits his argument that the jury did not appreciate that they must find that he had the specific intent to kill Mrs. Ohlinger in order to convict him of first degree murder. We have already reviewed and rejected this argument.

Pa. at 283, 684 A.2d at 1030. Although the existence of an agreement is an essential element of conspiracy, it is generally difficult to prove an explicit or formal agreement. *Commonwealth v. Dolfi*, 483 Pa. 266, 271, 396 A.2d 635, 638 (1979). Therefore, such an agreement may be established inferentially by circumstantial evidence, i.e. the relations, conduct or circumstances of the parties or overt acts on the part of co-conspirators. *Id.*

In the instant matter, the trial court properly determined that there was more than sufficient evidence for the jury to conclude that Appellant and Noland, through their actions, agreed to kill Mrs. Ohlinger. Thus, this claim does not provide a basis for disturbing Appellant's judgment of sentence.

Appellant's final claim is that the trial court erred in failing to grant a mistrial during the sentencing phase when the Commonwealth introduced evidence of eight burglary charges although Appellant was convicted of only three. This claim fails.

During the sentencing phase of Appellant's trial, the Commonwealth sought to establish the existence of a significant history of prior felony convictions involving the use or threat of violence to the person as an aggravating circumstance pursuant to 42 Pa.C.S. § 9711(d)(9). At sidebar, the District Attorney informed the court that there was evidence of four prior robbery convictions and three burglary convictions. Defense counsel did not object to the admissibility of this evidence, if properly presented. However, when the Clerk of Courts of Cumberland County was asked to refer to a criminal file and state to what charges Appellant had entered a guilty plea, the Clerk responded, "burglary, eight counts, receiving stolen property." [12] Defense counsel immediately objected and requested a mistrial. The trial court sustained the objec-

---

12. It appears from the record that Appellant had been charged with eight counts of burglary, but had pled guilty only to three. Also, the trial court notes that the defense counsel objected here on the basis that the reference to receiving stolen property, a misdemeanor, was not admissible.

tion, but denied counsel's motion for a mistrial. Immediately following the denial of the motion for a mistrial, the trial court gave cautionary and curative instructions, essentially advising the jury that they were to disregard any reference to charges of receiving stolen property and that they were only to consider those felonies involving the use or threat of violence to a person for which Appellant had been convicted. Following these instructions, the Clerk of Cumberland County then testified that Appellant had pled guilty to three, rather than eight, counts of burglary.

The granting or denial of a mistrial is within the sound discretion of the trial court. *Commonwealth v. Crawley*, 514 Pa. 539, 554, 526 A.2d 334, 342 (1987). A mistrial must be granted only when the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial. *Id.* A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice. *Commonwealth v. Lawson*, 519 Pa. 175, 185, 546 A.2d 589, 594 (1988).

Here, we agree with the Commonwealth that in the first instance, it would be difficult to find that the inadvertent (but corrected) mention of eight counts of burglary, instead of the three Appellant pled guilty to, aroused undue prejudice against Appellant when his criminal record comprising the aggravating circumstance was lengthy.[13] Moreover, the Clerk's testimony clarifying the actual number of burglary counts Appellant had pled guilty to and the curative instructions given by the trial court were adequate to overcome any prejudice that may have occurred.[14] Thus, we find that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

13. The Clerk of Courts of Cumberland County testified that Appellant's record from Cumberland County showed two robbery convictions and three burglary convictions. Additionally, the Clerk of Courts of Franklin County testified that Appellant's record from Franklin County showed one robbery conviction.

14. Further, the witness following the Clerk of Courts of Cumberland County, Appellant's former parole officer, testified that Appellant had pled guilty to three counts of burglary in Cumberland County.

Having concluded that Appellant's claims for relief are without merit, we must, in compliance with our statutory duty pursuant to 42 Pa.C.S. § 9711(h)(3), affirm the sentence of death unless we determine that the sentence was the product of passion, prejudice or any other arbitrary factor; the evidence fails to support the finding of at least one aggravating factor; or the sentence is excessive or disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3).

Upon review of the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary factor. Rather, it was based upon evidence properly admitted at trial. We also conclude that the evidence was sufficient to support the finding of at least one aggravating factor, that Appellant had a significant history of felony convictions involving the use or threat of violence to another person. *See* 42 Pa.C.S. § 9711(d)(9).

In terms of our duty to determine whether Appellant's sentence is excessive or disproportionate, we note that on June 25, 1997, the Governor signed legislation that removes such a proportionality review requirement from the death penalty statute. Act of June 25, 1997, No. 28 § 1 (Act 28). However, while Section 3 of Act 28 states that the Act shall take effect immediately, Act 28 is not applicable to the instant case as Appellant's death sentence was imposed prior to June 25, 1997. Thus, applying Act 28 would result in an impermissible retroactive application of the law. *See Commonwealth v. Gribble,* 550 Pa. 62, 87–91, 703 A.2d 426, 439–40 (1997) (provisions of Act 28 removing proportionality review requirement from death penalty statute do not apply retroactively to death sentences imposed before June 25, 1997). Accordingly, we have reviewed Appellant's sentence in light of the sentencing data compiled and monitored by the Administrative Office of the Pennsylvania Courts. *Id.* at 89, 703 A.2d at 440. We conclude that the sentence of death imposed upon Appellant is not excessive or disproportionate to the penalty imposed in similar cases.

Accordingly, we affirm the verdict and sentence of death.[15]

---

**15.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i) (Supp.1997).