J-A28027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY MICHAELAN BORIA | : | |
| | : | |
| Appellant | : | No. 481 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 17, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000701-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: MARCH 12, 2026**

Anthony Michaelan Boria appeals from the judgment of sentence entered following his convictions for third-degree murder, firearms not to be carried without a license, perjury, false swearing, seven counts of recklessly endangering another person, and four counts of aggravated assault.[1] He challenges the sufficiency of the evidence and the discretionary aspects of his sentence. We affirm.

Boria's convictions stem from a shooting in March 2022. At the time, Boria was 17 years old. The trial court aptly summarized the evidence presented at Boria's non-jury trial as follows:

> On March 14, 2022, a large group of teenagers went to Brookline Park, near the intersection of Kenhorst Boulevard and Lancaster Avenue, Reading, Berks County,

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 4902(a), 4903(a)(1), 2705, and 2702(a)(1), respectively.

Pennsylvania to watch a fistfight between Gerson Caicedo ([Caicedo]) and Jeniel Lozano-Gonzalez ('Ace'). At approximately 7:30 [p.m.], the crowd gathered in the park. The majority, if not all, of the spectators arrived in three different groups. The first group met up with 'Ace' and included Tyshawn Harris, Jonissa Baez, Alexus Alvarado, Reakwon Alvarado, and Kendall Blunt. The second group included Amiere Bibbs and Marcus Landis, who also joined with 'Ace'. A third group accompanied the other participant, Gerson Caicedo and included Henry Madera, [Boria], and Julian Evans. This third group passed by the park in Boria's car, a red sedan, which slowed down and then continued past, parked nearby and returned on foot. The approximately 8-10 people with Ace were on the 'pavilion side' and the remaining 4 people, including [Caicedo], were on the other side of the park.

The fistfight began between the two boys with the spectators on their respective sides. Madera, Boria, and Evans had fanny packs across their chests. Marcus Landis had a handgun, a .40 caliber Taurus pistol, in his hoodie pocket. During and after the fistfight, Marcus Landis began yelling back and forth with someone on the other side of the park (believed to be Boria). Marcus Landis testified that the person had his hands like he was trying to pull something out. He yelled 'what are you looking [at]' and that is when he pulled out at least a part of his loaded weapon, so it was visible. During the verbal back and forth, Evans was described as 'clutching'. Jonissa Baez and Alexus Alvarado testified Marcus displayed the weapon and may have racked the slide. Boria, Madera, and Evans reached toward their fanny packs. Each fanny pack concealed a 9mm weapon. Boria, Madera, and Evans all began shooting their 9mm handguns wildly discharging a total of 43 shots in a period of approximately 8 seconds. Many shell casings were recovered and were primarily clustered into three separate groupings, although the Commonwealth could not establish which grouping was attributable to Madera as opposed to Boria or Evans. Marcus Landis denied shooting his gun. No ejected .40 caliber cartridges, unspent or spent, were found in the park. A cell phone video of the incident was introduced as Commonwealth Exhibit 11.

As a result of the shooting, Amiere Bibbs was killed. Jonissa Baez was shot in the back (exiting through her

stomach), shot in the leg (splitting her femur) and grazed by a third bullet. The injuries to Jonissa Baez required two different surgeries and physical therapy. Ms. Baez still had lingering effects including extremity weakness and seizures, at the time of trial. Marcus Landis was shot through the leg requiring six surgeries and has a permanent drop foot. Kendall Blunt was shot in the buttocks.

. . . . Neither Boria nor Madera were able to possess a license to carry a firearm due to age requirements since they were both under 21 years old at the time of the incident.

Memorandum Opinion, filed 6/17/25, at 2-4. Boria claimed self-defense and testified that he began firing into the crowd after he saw Landis pull his firearm and heard him rack it.

The court found Boria guilty of the above-referenced offenses and imposed an aggregate term of 23 to 46 years' incarceration. Boria filed a timely post-sentence motion for reconsideration of sentence. Boria argued that he was a juvenile at the time of the crime and asserted that "a juvenile has a greater capacity for change and rehabilitation than a demonstrably incorrigible adult." Post Sentence Motion to Reconsider Sentence, filed 12/27/24, at ¶ 10. The court denied the motion, and this timely appeal followed.[2]

Boria raises the following issues:

[1.] Whether the trial court erred in finding that the Commonwealth's evidence was sufficient to negate beyond a reasonable doubt the defense of self-defense beyond a reasonable doubt as to the charges of Murder in the Third Degree and the Aggravated Assault counts.

_____

[2] Madera also appealed. **See** No. 39 MDA 2025.

- 3 -

[2.] Whether the trial court erred in finding that the Commonwealth's evidence was sufficient to establish accomplice liability beyond a reasonable doubt such that [Boria] could be held responsible for the death of the decedent and/or the injuries to others.

[3.] Whether the trial court erred and abused its discretion in imposing an overall sentence of 23 years to 46 years by failing to take into due consideration [Boria's] age at the time of the offense, his amenability to treatment, the facts and circumstances underlying the offense and [Boria's] rehabilitative needs.

Boria's Br. at 5 (answers of trial court and suggested answers omitted, numbers added).

Boria's first two issues challenge the sufficiency of the evidence. Our standard of review for such a claim is settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the

combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

***Commonwealth v. Brockman***, 167 A.3d 29, 38 (Pa.Super. 2017) (citation omitted).

Boria claims that the evidence was insufficient for third-degree murder and aggravated assault. He argues that given his immaturity and "the timeline of the incident marked in seconds, . . . the Commonwealth failed to disprove that [he] acted in self-defense[.]" Boria's Br. at 10. Boria alleges that "[a]t best the Commonwealth proved that the belief that deadly force was necessary was mistaken" and as such, his culpability was reduced to that required for voluntary manslaughter. ***Id.*** at 10.

He also points to the testimony of two Commonwealth witnesses, Evans and Alvarado. ***See id.*** at 17. He notes that Evans testified that he saw Landis point his gun at him and his group of friends. Additionally, Alvarado admitted that in a prior statement to police, she said that she saw Landis pull out his gun and heard him rack it. ***See id.***

Citing his own testimony, Boria argues that had a reasonable belief that deadly force was necessary and that Landis provoked him with his statements and when he showed his firearm. Boria notes that he testified that he started to run after seeing Landis pull out his gun and that he started firing his gun because he "thought he was returning fire." ***See id.*** at 18, 19. Though the

court did not find his testimony credible, Boria maintains that the "disbelief of the defendant's testimony is not sufficient to satisfy the Commonwealth's burden to disprove self-defense absent some evidence negating self-defense." *Id.* (citing *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001)). Boria alleges that "the possibility of being able to retreat to complete safety [wa]s illusory" because leaving would have exposed him "to the danger of being shot." *See id.* at 20-21. He also argues that the court "seems to indicate that [Boria] needed to wait to have the gun pointed at him before acting." *Id.* at 21.

The crime of third-degree murder is "a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Travinski*, 346 A.3d 787, 791 (Pa.Super. 2025), *reargument denied*, (Dec. 9, 2025) (citation omitted).

Aggravated assault occurs when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). Self-defense is a complete defense if:

> 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat.

*Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa.Super. 2021) (citing 18 Pa.C.S. § 505(b)(2)).

"While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense." *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa.Super. 2014) (quoting *Torres*, 766 A.2d at 345). Once there is evidence justifying such a finding, "then the issue is properly before the fact finder." *Id.* (quoting *Torres*, 766 A.2d at 345). The fact finder does not have to credit the evidence supporting the self-defense claim. *See Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011). However, disbelief of a defendant's testimony alone will not satisfy the Commonwealth's burden to disprove the claim. *See Torres*, 766 A.2d at 345 (stating that "Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony").

If there is evidence justifying a finding that the defendant acted in self-defense, the Commonwealth has the burden "to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." *Smith*, 97 A.3d at 787 (citation omitted). The Commonwealth may meet this burden by establishing any of the following: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Id.* (citation omitted).

Nevertheless, if the Commonwealth establishes the first element but fails to establish the second and third elements, "the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense." ***Commonwealth v. Jones***, 271 A.3d 452, 458 (Pa.Super. 2021).

Here, the trial court rejected Boria's sufficiency claim. It stated that it did not find Boria's testimony credible but that it believed Landis's testimony and found that the Commonwealth had disproved the claim of self-defense. ***See*** Memorandum Opinion at 8. The court pointed to the circumstantial evidence disproving the claim, such as the absence of bullets collected from the scene matching Landis's gun, the number of times the defendants fired their weapons, that all the victim's injuries were from behind, and "the indiscriminate nature of the discharge of the guns (not focused on one intended target)[.]" ***Id.*** at 8-9.

> Boria and Madera testified about the reasons for bringing their own gun but also believed that the other (and Julian) was armed. All three co-defendants were described by witnesses as having fanny packs on their chest where the guns were drawn from at the time of the shooting. The Court found Marcus Landis credible when he stated that while he displayed his gun, he did not point it at anyone. His actions, while enough to give pause to others, were not provoking in a way to escalate the situation to require the use of deadly force. Neither Boria nor Madera were credible when they indicated Landis fully displayed and racked his gun. It was not reasonable to believe that Boria, Madera, or Evans were in danger of death or serious bodily injury to justify escalating a fist fight into a wild west shooting gallery. The evidence did not establish that any bullets were discharged by Landis or anyone on 'Ace's side.' Once Boria, Madera, and Evans pulled out their guns, Landis turned and ran. Any or all three of them could have similarly chosen to leave but

instead each pulled out his gun and discharged a barrage of bullets in concert. Amiere Bibbs, the deceased, was struck in the chest (as well as his leg) and was entirely unharmed. There was no retreat by the three shooters until they each had fully discharged their weapons. While it is unclear which of the three (Boria, Madera, or Evans) discharged the first bullet, this does not justify the actions of Boria. Having repeatedly viewed the cellphone video of the incident, and considering the collaborative actions of Boria, Madera, and Evans, the amount of shots from each gun, the indiscriminate nature of the discharge of guns (not focused on one intended target), the fact that the injuries to Landis, Baez, and Blunt were all from the back as they (and the other people present) were fleeing, the Court found that the Commonwealth had properly negated the self-defense claim.

*Id.* (footnote omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient. Contrary to Boria's suggestion, the court did not base its finding that the Commonwealth disproved his self-defense claim solely on its disbelief of his testimony. The court as fact-finder was free to believe all, part, or none of the testimony, and it credited Landis' testimony that he did not pull his gun completely out. Furthermore, a total of 43 bullets were recovered from the scene after Boria and his co-defendants shot into the crowd of people, with every victim of the shooting being shot from behind, including the decedent. The further finding that the three could have chosen to leave but did not is likewise supported. Moreover, despite Boria's and Alvarado's testimony that they heard Landis's gun being racked, no bullets or spent shell casings were recovered at the scene that matched his firearm. ***See***

N.T., Trial, 10/30/24, at 265. The evidence was sufficient to disprove self-defense.

Next, Boria claims that the evidence failed to establish that he was an accomplice. Boria maintains that the evidence "failed to prove . . . that the shooters acted in concert as accomplices and therefore caused the death of the decedent" since the Commonwealth failed to prove who caused the death. Boria's Br. at 10. Boria again points to the age of the defendants, stating "these are not seasoned adults[.]" *Id.* at 25. He further maintains that the court's citations to *Commonwealth v. Spotz*, 716 A.2d 580 (Pa. 1998), and *Commonwealth v. Bachert*, 453 A. 2d 931 (Pa. 1982), are misplaced because in the instant case, there was no agreement or facilitation of a crime.

"A person is legally accountable for the conduct of another person when . . . he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. § 306(b)(3). A person may be found guilty of an offense as an accomplice where there is evidence: 1) that the individual intended to promote or facilitate the commission of the underlying offense, and 2) the individual solicits another person to commit the offense or "aids or agrees or attempts to aid such other person in planning or committing" the offense. 18 Pa.C.S.A. § 306(c)(1). "No agreement is required, only aid." *See Commonwealth v. Kimbrough*, 872 A.2d 1244, 1251 (Pa.Super. 2005) (*en banc*).

Accomplice liability may be proven by wholly circumstantial evidence. *Id.* Where there are multiple offenders, the Commonwealth is not required to

establish the roles of each accomplice. *See Commonwealth v. Bradley*, 392 A.2d 688, 690 (Pa. 1978) (stating where evidence established that one defendant was the actor and the other was the accomplice in shooting of storekeeper but insufficient to establish who fired, "it was not incumbent upon the prosecutor to identify their roles" since both share responsibility for the act under accomplice liability theory).

The trial court rejected this claim. It concluded that "[t]he concerted actions of the three co-defendants and the totality of the attendant circumstances established that each defendant's participation was with intent of facilitating commission of the crimes of Murder of the Third Degree, Aggravated Assault, and Recklessly Endangering Another Person." Memorandum Opinion at 11. It explained:

> Boria, Madera, and Evans all arrived together with [Caicedo]. Boria testified that he was asked to come along "to make sure he is all right." While both Boria and Madera asserted they did not discuss with the others whether or not to bring a gun, Madera admitted he believed the other two were armed. All three kept their firearms in a fanny pack across their chest. The weapons were pulled almost in unison and the 43 bullets were discharged across the field in approximately 8 seconds.

*Id.* at 10-11 (citation to notes of testimony omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient for the fact-finder to conclude that every element for accomplice liability was proven beyond a reasonable doubt. The evidence showed that Boria and his codefendants arrived at the park together, each

carrying a firearm in their bag. At some point, all three defendants shot into the crowd, and all three ran away from the scene after firing their weapons. These collective actions of Boria and his co-defendants were sufficient proof that he intended to promote and aid in committing the offenses of third-degree murder, aggravated assault, and recklessly endangering another person.

Furthermore, the court committed no error in citing **Spotz** or **Bachert**. In **Bachert**, the Commonwealth presented evidence that sometime during the night of February 1, the victim picked up Bachert and his co-defendant while they were hitchhiking. 453 A.2d at 933. Bachert and his co-defendant then forced the victim to drive on a particular road. **See id.** at 934. The same night, the victim was found on a road with three gunshot wounds and later pronounced dead. **See id.** The next day, Bachert and his co-defendant were in a bar, and Bachert told some men in the bar, "We shot a guy." **Id.** (emphasis removed). After his arrest and on his ride to police headquarters, he also stated, "We stole a car tonight and we shot a guy, we wasted a guy." **Id.**

The jury found Bachert guilty of first-degree murder, conspiracy to commit murder, and other related offenses. On direct appeal, a panel of this Court vacated the judgment of sentence for first-degree murder, on the basis that the evidence was insufficient as to the element of intent to kill. Our Supreme Court reversed. The Court stated that "[t]he existence of a shared criminal intent between the principal and his accomplice may be inferred from

- 12 -

the circumstances or acts of the slayer and accomplice committed shortly after the slaying." *Id.* at 935. The Court concluded that although there was no direct evidence in that case of what happened before and after the victim was forced out of the car and shot, that did not "preclude a finding by the jury of culpability in the defendant, as inferred from his acts and words subsequent to the murder." *Id.* at 936.

Similarly, in *Spotz*, the appellant challenged whether there was sufficient evidence of specific intent to kill to support his first-degree murder conviction. The Commonwealth presented the testimony of Spotz's girlfriend that she and Spotz took the victim's car with her in it and drove her to a secluded area where Spotz shot the victim in the back of the head. *Spotz*, 716 A.2d at 584. On appeal, Spotz contended that his girlfriend was the actual shooter. He maintained that the evidence only established that he was an accomplice, and the conviction for first-degree murder could only stand if the Commonwealth had proven that he and his girlfriend had shared the specific intent to kill. Our Supreme Court found the evidence sufficient. It explained that, as a credibility matter, the jury was entitled to believe his girlfriend's testimony that Spotz was the shooter. *See id.* at 585.

The Court then concluded that in any event the evidence established Spotz's accomplice liability. It pointed out that Spotz's girlfriend had testified that the two of them were together when they took the victim in her car and drove to the secluded area, that Spotz had asked the victim questions to

determine how long it would take before someone noticed she was missing, and that Spotz had the gun that was used to shoot the victim in the back of her head. *Id.* at 586. It found that based on this evidence, "the jury could reasonably have concluded that [Spotz's] participation was, at a minimum, with the intent of facilitating the commission of [the victim's] murder," thus satisfying the intent element for accomplice liability. *Id.*

Like *Spotz* and *Bachert*, here there was no direct evidence of Boria's specific intent to facilitate the commission of the crimes. Additionally, like *Spotz* and *Bachert*, here the jury could have inferred Boria's facilitation or agreement to commit the charged crimes from the circumstantial evidence. *See Kimbrough*, 872 A.2d at 1251.

For his final issue, Boria challenges the discretionary aspects of his sentence. We do not address this claim because it is waived.

This Court may not address the merits of a discretionary sentencing claim before first determining whether: 1) the appeal is timely; 2) the issue has been preserved in a post-sentence motion or at the sentencing hearing; 3) the appellate brief includes a Rule 2119(f) statement; and 4) a substantial question is raised. *See Commonwealth v. Edwards*, 194 A.3d 625, 636 (Pa.Super. 2018); Pa.R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon

- 14 -

for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Boria's appeal is timely, but he has failed to preserve his sentencing claim. In his post-sentence motion, Boria asked the court to reconsider his sentence because Boria was a juvenile at the time of the crime and "a juvenile has a greater capacity for change and rehabilitation than a demonstrably incorrigible adult." Post Sentence Motion to Reconsider Sentence at ¶ 10. However, on appeal, he claims the court failed to consider his mitigating factors and disregarded his rehabilitative needs. Since this claim was not preserved, this claim is waived. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*) (stating failure to raise discretionary sentencing claim in post-sentence motion or sentencing hearing results in waiver).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2026