J-S04029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KHALIAF D. ALSTON | |
| Appellant | No. 645 EDA 2016 |

Appeal from the PCRA Order January 28, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0902311-2006

BEFORE:  SHOGAN, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                          **FILED MARCH 28, 2017**

Khaliaf D. Alston appeals from the order entered January 28, 2016, in the Court of Common Pleas of Philadelphia County, that denied his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546.  Alston was found guilty by a jury of attempted murder, robbery, criminal conspiracy to commit robbery, aggravated assault, and possessing an instrument of crime,[1] and was sentenced to an aggregate term of 40 to 80 years' imprisonment.  In this appeal, Alston contends the PCRA court erred (1) in dismissing, without an evidentiary hearing, his PCRA petition as to two issues — trial counsel's ineffectiveness in failing to move

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a) & 2502, 3701(a)(i)(i), 903 & 3701(a)(1)(i), 2702(a)(2), and 907(a).

for a mistrial and object to the court's cautionary instruction, and newly discovered evidence, respectively; and (2) in denying relief, following an evidentiary hearing, on his claim of trial counsel's ineffectiveness for failing to call witnesses. Based upon the following, we affirm.

The procedural history is fully set forth in the PCRA court's opinion, and there is no need to restate it herein. *See* PCRA Court Opinion, 5/6/2016, at 1–3. The facts of this case were previously discussed by this Court in Alston's direct appeal:

> At approximately 1:30 a.m. on February 4, 2005, Antoine Pinkney left the Outer Limits bar at the corner of Somerset Street and 24th Street [in Philadelphia], stopping briefly at a deli on Somerset Street. As he walked, Mr. Pinkney was suddenly approached from behind by two men. Mr. Pinkney did not know the men, but had seen them in the Outer Limits bar before he left. One man . . . told Mr. Pinkney not to make any "sudden moves" and began searching [Mr. Pinkney's] pockets, while the other man, [Alston], pointed a revolver at Mr. Pinkney. The two men took Mr. Pinkney's cell phone and approximately $800.00 in cash. During this time, [Alston] was fewer than "three [or] four feet" from Mr. Pinkney.
>
> Thereafter, Mr. Pinkney pleaded for his life, and told his assailants that he was "just trying to make it home to my kids." Nevertheless, [Alston] then shot Mr. Pinkney in the face. The bullet struck Mr. Pinkney directly in his right eye.
>
> Mr. Pinkney was able to run away from [Alston] and his co-conspirator despite having lost vision in his right eye. As Mr. Pinkney fled, he heard [Alston] shoot at him five or six more times. Mr. Pinkney ran into the street and flagged down a car, the occupants of which called the police. He was taken by ambulance to Temple University Hospital, where he remained for three days. Mr. Pinkney lost 90% of the vision in his right eye and has a permanent scar on the right side of his face.

On March 18, 2005, during an unrelated police investigation, Philadelphia Police Detective Ronald Dove executed a search warrant at 2849 North Taney Street, which was [Alston's] home address. In the course of performing the search of the house, Detective Dove recovered three letters from the living room. One letter read, in part, "I just shot some bull in his eye the other day, but that Bitch nigger ain't died, but I feel sorry for my next victim." Handwriting analysis showed that the letter had been written by [Alston]. After reading this letter, Detective Dove began looking for unsolved shootings in Philadelphia in which someone had been shot in the eye but survived.

Detective Dove was unsuccessful in matching the description in the letter to a specific shooting until December 2005, when he began working with a newly-formed task force in the Philadelphia Police Department. The task force was focused on investigating cases that involved "crimes of violence," specifically "shootings and murders" that had previously gone unsolved. On December 5, 2005, at a meeting of the task force, Detective Dove told Detective Thomas Gaul about the shooting mentioned in the letter, and Detective Gaul began researching the incident. Using different search parameters within the police department's computer system, Detective Gaul uncovered the police report for Mr. Pinkney's shooting.

On December 7, 2005, Detectives Dove and Gaul went to Mr. Pinkney's house and interviewed him about the robbery and shooting. As a result of their investigation, they had prepared a photo array that included [Alston's] photograph along with a second array. The detectives showed Mr. Pinkney the two photo arrays and asked him if he recognized anyone within those arrays. Mr. Pinkney immediately identified [Alston] as the man who robbed and shot him.

*Commonwealth v. Alston*, 81 A.3d 998 (Pa. Super. 2013) (unpublished memorandum, at 1–3 (citation omitted)), *appeal denied*, 80 A.3d 774 (Pa. 2013).

First, Alston contends the PCRA court erred in dismissing, without an evidentiary hearing, his PCRA petition as to two issues, namely, (1)

- 3 -

counsel's ineffectiveness in failing to move for a mistrial and object to the trial court's cautionary instruction, and (2) newly-discovered evidence. We address these issues sequentially.

To obtain reversal of a PCRA court's summary dismissal of a petition, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief. *Commonwealth v. Baumhammers*, 92 A.3d 708, 726 (2014). Regarding ineffectiveness of counsel (IAC) claims,

> "It is well-established that counsel is presumed effective, and [a PCRA petitioner] bears the burden of proving ineffectiveness." *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1137 (Pa. 2009); *see also Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (Pa. 1987) ("We . . . presume that counsel is acting effectively."); *accord Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (establishing the elements a defendant must prove to show IAC). As the Supreme Court of the United States has stated, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' and . . . the burden to 'show that counsel's performance was deficient' rests squarely on the defendant." *Burt v. Titlow*, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quoting *Strickland*, 466 U.S. at 687, 690).

> To prevail on an IAC claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice. *Commonwealth v. Baumhammers*, 92 A.3d 708, 719 (Pa. 2014) (citing *Pierce*, 527 A.2d at 975-76). A petitioner must prove all three factors of the "*Pierce* test," or the claim fails. *Id*. In addition, on appeal, a petitioner must adequately discuss all three factors of the "*Pierce* test," or the appellate court will reject the claim.

> *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d 795, 804 (Pa. 2014).

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779-80 (Pa. Super 2015) *(en banc)*, *appeal denied*, 123 A.3d 331 (Pa. 2015).

Here, Alston claims trial counsel was ineffective for failing to move for a mistrial based on Detective Dove's testimony that referenced his membership in the homicide task force, and for failing to object to the trial court's curative instruction. The underlying issue was raised in Alston's direct appeal. This Court summarized the claim as follows:

> Stated briefly, [Alston] seeks a mistrial on the basis that the trial court refused to preclude investigating officers from referring to the fact that the initial investigation of [Alston] in connection with another crime, which led to the attempted homicide and other charges at issue here, arose in connection with investigators' work with a "homicide task force." Brief for Appellant at 10-15. [Alston] notes that the investigation that brought [Alston] to the detectives' attention was not in connection with a homicide, and that the references to the task force and its role in investigating homicides necessarily and prejudicially implicated [Alston] in prior homicide investigations. [Alston] further argues that the trial court's cautionary instruction, issued shortly after one witness mentioned the task force, not only did not ameliorate the prejudice, but in fact "caused the jurors to pay even more attention" to the problematic testimony. *Id*. at 11, 13.

*Commonwealth v. Alston*, *supra,* 81 A.3d 998 (Pa. Super. 2013) (unpublished memorandum, at 5–6).

This Court, on direct appeal, while not rejecting the Commonwealth's position that Alston had waived the issue by failing to move for a mistrial in the trial court and by failing to object, concluded that the issue was waived

- 5 -

for failure to develop the issue in Alston's appellate brief. *Id.*, at 6 ("Indeed, we need not delve deeply into the Commonwealth's bases for arguing that [Alston] waived these claims, which is not to say that we reject these bases. Rather, we find that [Alston's] argument in connection with his first and second issues as stated simply fails to satisfy the requirements of Pa.R.A.P. 2119(a), which requires citation and development of legal authority pertinent to the issue raised.").

Alston now raises the instant ineffectiveness claim, contending that the underlying issue has merit, trial counsel had no reasonable basis not to seek a mistrial, and he suffered prejudice because the issue was waived for failure to raise it in the trial court.

In addressing Alston's PCRA petition, the PCRA judge, the Honorable Glenn B. Bronson, reiterated his reasoning previously set forth in his opinion filed in connection with Alston's direct appeal, explaining that the issue was meritless:

> [Alston] raised the underlying basis for his current ineffective assistance of counsel claim on his direct appeal, contending that the Court erred in allowing the detectives to reference their membership in the homicide task force. In its Opinion regarding [Alston's] direct appeal this Court addressed the issue as follows:
>
> > Any references at trial to "homicide" were made solely to identify police officers involved in [Alston's] investigation, which included homicide detectives, and to identify the name of the task force that solved the case. After Mr. Pinkney's robbery and shooting, the case remained unresolved until Detective Dove brought it to the attention of a task force that had been formed within the

- 6 -

Philadelphia Police Department. N.T. 12/18/2007 at 174, 219–220. Detective Dove referred to this task force as a "homicide task force." N.T. 12/18/2007 at 173, 174, 208, 216. However, Detective Gaul explained that the task force investigated various "crimes of violence," and was not exclusively focused on homicides. N.T. 12/18/2007 at 219. Detective Dove testified that he had been attempting to identify the victim from the shooting described in [Alston's] letter, and that when the task force was formed, he enlisted the help of the task force. N.T. 12/18/2007 at 211. Detective Gaul, who was a member of the task force, was able to locate the police report for Mr. Pinkney's shooting. N.T. 12/18/2007 at 210–211. Both detectives then interviewed Mr. Pinkney, who identified [Alston] as the shooter. N.T. 12/18/2007 at 221–227. [Alston] was thus arrested as a direct result of the detective work of the "homicide task force." The testimony involving the task force itself was necessary to explain how police identified defendant as the shooter. In any event, potential prejudice due to the references to "homicide" were ameliorated by the following cautionary instruction, given by the Court in an abundance of caution:

> Folks, thank you for your patience. You heard this detective and some of the other detectives say that they were on a Homicide Task Force. Just want you to understand, ladies and gentleman, that this case is not a homicide. The most serious charge that's been leveled in this case is attempted murder, and you should not draw any inference adverse to the defendant from the fact that the detectives who happened to be working on the case were involved in a homicide task force. As you heard they were also investigating non homicide's [*sic*] such as this case. So, make sure that you don't hold it against the defendant in any manner that these detectives had said they're working in homicide.

N.T. 12/19/2007 at 22–23.

Trial Court Opinion, filed 3/26/2012, at pp. 6–7. In that same Opinion, the Court addressed the issue as to whether [Alston]

- 7 -

was entitled to a mistrial due to references to the homicide task force as follows:

> [It] is well-established that "[a] mistrial is required only where the nature of the event is such that its unavoidable effect is to deprive the defendant of a fair trial." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 420 (Pa. 2011). Additionally, "[a] mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." ***Commonwealth v. Spotz***, 716 A.2d 580, 593 (Pa. 1998). As stated above, the Court gave the jury a cautionary instruction that fully ameliorated any potential prejudice that references to "homicide" may have created. N.T. 12/19/2007 at 22-23. Under these circumstances, it could not be said that those references had the "unavoidable effect" of depriving [Alston] of a fair trial.

Trial Court Opinion, filed 3/26/2007, at pp. 7–8.

PCRA Court Opinion, 5/6/2016, 7–8 (footnote omitted).

Applying this analysis to Alston's ineffectiveness claim, the PCRA judge concluded:

> Accordingly, for the reasons set forth above in this Court's prior Opinion, the references to the homicide task force were neither improper nor prejudicial, and were properly permitted by the Court. Moreover, any conceivable prejudice was completely ameliorated by the clear cautionary instruction given to the jury. While [Alston] complained of this curative instruction in his Amended Petition, he at no time cited, and the Court is unaware of, any authority suggesting that the instruction was in any way improper. Therefore, defense counsel had no valid basis to move for a mistrial based on the references to the homicide task force, and no basis to object to the curative instruction. Since trial counsel could not have been ineffective for failing to present a meritless motion for mistrial, or an objection to a proper jury instruction, no relief is due. Because [Alston] cannot demonstrate that the underlying claims are of arguable merit, the Court did not need to hold an evidentiary hearing, as such a hearing would serve no purpose.

*Id.* at 8–9 (citations omitted).

Based on our review, we find the PCRA court's discussion fully addresses and properly disposes of Alston's ineffectiveness claim. Moreover, Alston makes only the bald assertion in his brief that "counsel's failure to offer an objection to the court's ruling or jury instruction is of arguable merit," without any elaboration to demonstrate how the PCRA court erred in its analysis. Alston's Brief at 22. Accordingly, there is no basis upon which to disturb the PCRA court's decision to dismiss this ineffectiveness claim without a hearing.

Alston also contends his after-discovered evidence claim warranted an an evidentiary hearing.

> To be entitled to relief under the PCRA on this basis, the petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). As our Supreme Court has summarized:
>
> > To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.
>
> *Commonwealth v. Pagan*, 597 Pa. 69, 106, 950 A.2d 270, 292 (2008) (citations omitted). "The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas*, 2010 PA Super 108, 997 A.2d 356, 363 (Pa.Super. 2010) (citation omitted).

***Commonwealth v. Foreman***, 55 A.3d 532, 537 (Pa. Super. 2012).

Alston contends he is entitled to a hearing based on newly discovered evidence that former Detective Dove "has been arrested and charged with various criminal offenses including conspiracy to commit murder. Allegedly, he helped his girlfriend allude police and covered up her murders." Alston's Brief at 23. Alston asserts, "It is now known that he officer in question has been so compromised that the Commonwealth will no longer prosecute his cases. His role at the time of the instant trial was being investigated in at least three homicides by the Commonwealth. None of this was revealed to the defense at the time of trial." ***Id.*** at 24. Our review confirms the PCRA court's summary dismissal of this claim.

To be entitled to relief based upon an after-discovered evidence claim, a petitioner must, *inter alia*, establish that the proposed after-discovered evidence is "producible and admissible." ***Commonwealth v. Griffin***, 137 A.3d 605, 608 (Pa. Super. 2016) (citation omitted), *appeal denied*, ___ A.3d ___ (Pa. 2016). Here, however, Alston's after-discovered "evidence" is inadmissible because the evidence consists only of criminal charges against a witness, not convictions. ***See, e.g., Griffin, supra***, 137 A.3d at 609 ("[A federal] indictment is not evidence. Rather, an indictment 'is a final accusation by the grand jury charging a person with the commission of a crime, and such charge, in itself, is no indication of an accused's guilt.'") (citations omitted).

Moreover, even if the criminal charges were "evidence," the charges would only serve to impeach Detective Dove and, as such, do not meet the four-prong after discovered evidence test. *See Griffin, supra*, 137 A.3d at 610 ("A defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence 'solely to impeach a witness's credibility.'"); *Commonwealth v. Foreman*, 55 A.3d 532 (Pa. Super. 2012) (filing of criminal charges against detective in an unrelated matter does not meet the after-discovered evidence test since such evidence would be used solely to impeach the credibility of the detective).

Also, as the PCRA court points out, in light of the overwhelming evidence of Alston's guilt independent of Detective Dove's testimony — specifically, the victim's identification of Alston, and the incriminating letter found at Alston's home, determined by a handwriting expert, to be written by Alston — Alston cannot possibly show that the proffered "evidence" of Detective Dove's alleged misconduct would lead to a different result. Therefore, for all the above reasons, we conclude the PCRA court properly dismissed Alston's after discovered evidence claim without a hearing.

Lastly, Alston argues the PCRA court erred in denying him relief on the issue presented at the evidentiary hearing concerning trial counsel's failure to call two witnesses, Phillippe Bibbs and Dominique Everett.

For the claims on which a hearing was held, we consider whether the PCRA court's findings are supported by the record and free of legal error. *Baumhammers, supra*, 92 A.3d at 714.

To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, an appellant must prove:

> (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

***Commonwealth v. Chmiel***, 889 A.2d 501, 545-546 (Pa. 2005) (citations omitted). Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense. ***Id***. Thus, Appellant must demonstrate how the testimony of the foregone witness would have been beneficial under the circumstances of the case. ***Id***.

In the present case, at the conclusion of the evidentiary hearing, the PCRA court accepted trial counsel's testimony that Alston had told him not to call Everett. The PCRA court further found Bibbs' account "utterly beyond belief,"[2] and concluded trial counsel had a reasonable basis for not calling Bibbs based on counsel's belief such testimony would weaken the defense's case. N.T., 1/7/2016, at 100–101. In its opinion, the PCRA court explained:

> The Court held an evidentiary hearing on this issue on January 7, 2016. At the hearing, [Alston] testified on his own behalf, and presented the testimony of Bibbs and Everett. The

---

[2] N.T., 1/7/2016, at 100.

Commonwealth presented the testimony of trial counsel, Robert Miller, Esquire. The evidence presented at the hearing clearly established that Miller was not ineffective for failing to call Bib[b]s and Everett.

At the hearing, [Alston] testified that on the night of the shooting, he was present in his house with his girlfriend, Dominique Everett. Everett corroborated [Alston's] testimony, claiming that [Alston] was with her the evening of the robbery and spent the night. Bibbs testified at the PCRA hearing that he was present outside [Alston's] home on the night of the shooting and that he saw [Alston] enter the home and not leave. Both Bibbs and Everett testified that they were willing and able to testify at [Alston's] trial, but were not called as witnesses.

Trial counsel Miller testified that he had compelling reasons for not calling either Bibbs or Everett. According to Miller, Everett had testified on behalf of [Alston] in a different case in which Miller had represented [Alston], and she was a very ineffective witness. Miller believed that Everett would not be believable and therefore would weaken the defense. In addition, [Alston] explicitly told Miller that [Alston] did not want Miller to call Everett as a witness. As to Bibbs, Miller testified that he was concerned that he had learned about Bibbs only shortly before the trial, and he believed that Bibbs was fabricating the alibi. Miller believed that he had a potentially winnable defense based upon misidentification, and did not want to weaken that defense with bad alibi witnesses.

This Court, as the finder of fact at the evidentiary hearing, found attorney Miller's testimony to be credible. Because the record established a reasonable basis for Miller not calling these witnesses, his failure to call them at trial was not constitutionally ineffective.

Moreover, the record demonstrates that Miller's failure to call these witnesses did not prejudice [Alston]. As stated above, the evidence at trial established that [Alston] wrote a letter bragging about shooting someone in the eye who managed to survive, which precisely matched the shooting at issue in this case. When his picture was placed in a fair photo spread, the victim unequivocally identified defendant as the assailant. The incredible alibi offered by Everett and Bibbs was certainly not reasonably likely to change the result at trial.

Accordingly, the record establishes that Miller had a reasonable basis for declining to call Everett and Bibbs at trial, and that no prejudice resulted from the lack of their testimony. Therefore, the Court properly found that Miller did not deprive [Alston] of effective assistance of counsel by failing to call Everett and Bibbs as alibi witnesses at trial.

PCRA Court Opinion, 5/6/2016, at 12-13 (record citations omitted).

Based on our review, we discern no basis upon which to disturb the decision of the PCRA court. While Alston assails the PCRA court's credibility findings and assessment of overwhelming evidence of guilt, the record supports the PCRA court's determinations. Accordingly, Alston's final argument fails to warrant relief.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2017