J-S75016-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YAD BASNET | : | |
| | : | |
| Appellant | : | No. 616 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 4, 2019,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0006327-2018.

BEFORE:    STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    FILED MARCH 30, 2020

Yad Basnet appeals from the judgment of sentence imposed following

his conviction of aggravated assault and conspiracy.[1]  We affirm.

The trial court set forth the relevant facts underlying the instant appeal,

as follows:

> [Basnet] and Anthony Barbaryka ("Barbaryka") were
> regulars at Diamond Jim's Café ("Diamond Jim's"), located at
> 2002 Brownsville Road, Pittsburgh, Pennsylvania, 15210.  On April
> 1, 2018, Ms. Judy Cole ("Cole"), was working as manager and
> bartender at Diamond Jim's.  Barbaryka and Michael Jenesky
> ("Jenesky") had already been in the bar for a while, drinking and
> watching sports, before [Basnet] entered with a friend.  [Basnet]
> and his friend ordered one shot from Cole around midnight.  The
> two men finished their shot and left the bar.  After some time,
> [Basnet] and his friend came back to Diamond Jim's.  Several
> moments later, there was a verbal disagreement between

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] See 18 Pa.C.S.A. §§ 2702(a)(1), 903.

[Basnet], Barbaryka and Jenesky. [Basnet], who speaks broken English, was presumed to have made some derogatory remarks to Jenesky. Cole, conscious of the potential fight transpiring between [Basnet], Barbaryka, and Jenesky, gave a last call to everyone in the bar, and stated that she was closing up for the night. [Basnet] ordered one last shot, but Cole refused to serve him. [Basnet] began to argue with Cole, and [Basnet] and his friend were ordered to leave Diamond Jim's. Cole locked the door behind them. Once [Basnet] and his friend left, [Basnet] began kicking the door and yelling obscenities. Cole told [Basnet] to stop kicking the door. Shortly after the kicking stopped, Cole asked Barbaryka and Jenesky to leave. Barbaryka and Jenesky left the bar together. . . .

When Barbaryka left the bar, he was jumped by a group of guys. The men began hitting Barbaryka from all angles on his head, back, and side. From her position, Cole recognized [Basnet] as one of the men attacking Barbaryka. Jenesky also identified [Basnet] as one of the men who chased and attacked Barbaryka. Two men chased Jenesky behind a van, while [Basnet] and at least one other man chased Barbaryka across the street. Barbaryka was hit by multiple assailants. At this time, Officer Gilkinson, who was responding to another 911 call, was driving towards the bar, and witnessed two people fighting in the middle of the street. Officer Gilkinson activated his emergency lights and hit his siren, and the two people stopped fighting. One male entered a white vehicle, and drove away towards Brentwood at a high rate of speed. Meanwhile, Officer Gilkinson went to examine the other man, . . . Barbaryka, who was bleeding heavily from his right arm and his lip. Barbaryka had sustained three stab wounds, one to his right arm, his back, and his right flank.

Trial Court Opinion, 7/15/19. At 2-4 (unnumbered, citations to the record omitted).

Police arrested Basnet and charged him with aggravated assault and conspiracy. Following a non-jury trial, the court found Basnet guilty of both counts. On March 4, 2019, the trial court sentenced Basnet to an aggregate term of three to six years imprisonment, followed by one year of probation.

Basnet filed a post-sentence motion, which the trial court denied. He thereafter filed a timely notice of appeal. Both Basnet and the trial court complied with Pa.R.A.P. 1925.

Basnet raises the following issues for our review:

1. Was the evidence insufficient to sustain the verdicts on the theory of accomplice liability when the Commonwealth failed to prove beyond a reasonable doubt that Mr. Basnet had the requisite mens rea for the offense of aggravated assault, particularly that he intended to commit serious bodily injury to the victim?

2. Were the verdicts rendered contrary to the weight of the evidence presented in that the Commonwealth's evidence was contradictory, tenuous, vague and uncertain and the verdicts shock the conscience of the court when no one could testify that Mr. Basnet assaulted and stabbed the victim?

Basnet's Brief at 6 (capitalization omitted).

In his first claim, Basnet challenges the sufficiency of the evidence supporting his convictions for aggravated assault and conspiracy. Our scope and standard of review of a sufficiency claim is well-settled:

[O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

- 3 -

Commonwealth v. Franklin, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotation marks omitted).

In order to sustain a conviction for aggravated assault, the Commonwealth must prove beyond a reasonable doubt that the defendant "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is further defined by the Crimes Code as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

A person is guilty of conspiracy to commit a crime if with the intent of promoting or facilitating its commission, he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Id. § 903(a).

Basnet does not challenge the trial court's finding that Barbaryka sustained serious bodily injury. He contends, however, that evidence proving beyond a reasonable doubt that he acted with malice in causing serious bodily, or conspired with another to do so, was lacking. Specifically, Basnet claims

- 4 -

that the record is devoid of testimony regarding the identity of the individual who stabbed Barbaryka. Basnet further claims that no Commonwealth witness saw him with a knife, or saw him stab Babaryka, or saw him restrain Barbaryka, or provide a knife to another individual for use during the fight. While Basnet concedes that he was present at Diamond Jim's on the night in question, he argues that mere presence is insufficient to establish that he stabbed Barbaryka, or conspired with another to do so.

Viewing the record in the light most favorable to the Commonwealth, as the verdict winner, we conclude that the evidence demonstrates Basnet's active participation in the aggravated assault of Barbaryka. Cole, a manager and bartender at Diamond Jim's, testified that on the evening of April 1, 2018, Basnet and a friend came to the bar around midnight and ordered a shot. N.T. Trial, 11/29/18, at 13-16. Barbaryka and Jenesky were present in the bar. Id. Basnet and his friend left the bar, but later returned and asked to purchase a six-pack of beer. Id. at 6-17. After Cole complied, she heard Basnet say something derogatory to Jenesky. Id. at 17. Cole stated that Basnet was the "instigator" and that he "started the fight." Id. at 25.

Sensing that something was going to transpire between the men, Cole closed the register and told the men it was last call, and they needed to leave. Id. at 17-18. Basnet and his friend asked for a shot. Id. at 18. Cole declined, and Basnet became argumentative and refused to leave the bar. Id. Cole indicated that Barbaryka and Jenesky "were backing [her] up," and "they told

[Basnet and his friend] to get going . . ." Id. at 21. Cole then physically escorted Basnet and his friend to the door, pushed them outside, and locked the door. Id. at 18-19. Basnet and his friend then began kicking the door. Id. at 19. Cole opened the door twice to tell them to stop kicking the door, but they refused to do so. Id. at 20. On the second occasion that she opened the door, Cole noticed that Basnet was talking on his phone. Id.

A few minutes later, she again told Barbaryka and Jenesky that she was closing, and they also needed to leave. Id. After they left the bar, she heard screaming outside, and saw Basnet and four others pursuing Barbaryka and Jenesky. Id. at 21. She stated that Jenesky was in a garage area with three of the men, while "[Basnet] and [the same friend that had been in the bar with him were] fighting with [Barbaryka]" across the street. Id. at 22; see also id. (where Cole reiterated "[Barbaryka] was across the street with [Basnet] and another kid. They were fighting."). When asked what she witnessed regarding the fighting involving Barbaryka and Basnet, Cole stated, "it was dark out. I could just see hands going, pushing, shoving. I couldn't tell you exactly because it was dark." Id. at 24.

Police Officer Kurt Gilkinson testified that, while driving on Brownsville road on his way to another emergency, he came upon two men fighting in the street outside Diamond Jim's. Id. at 7. Officer Gilkinson activated his emergency lights and his siren, and pulled over. Id. at 8. One of the men

then broke free from the other, and jumped into a white vehicle that sped away. Id.

Mr. Jenesky testified that, when he and Barbaryka left the bar, there were five men outside, including Basnet. Id. at 40. He indicated that some of the men chased him. Id. at 41. According to Jenesky, Basnet was part of the group that chased Barybaryka across the street. Id. at 41. Jenesky indicated that he could see that Barbaryka was "in trouble" and that "[h]e was on the ground with [at least Basnet] on top of him." Id. at 41, 43. When Jenesky tried to run to help Barbaryka, the men chasing Jenesky began hitting him from behind with their fists. Id. at 42. Jenesky stated that the attack occurred approximately 15 minutes after he and Basnet were "having words." Id. at 47.

Finally, Barbaryka testified that, as he was walking out of the bar with Jenesky, he "got pummeled by a couple guys." N.T. Trial, 12/4/18, at 7. He testified that he was chased by more than one person and that he was being chased, hit and kicked all at the same time. Id. at 8-9. Barbaryka was hit from behind in the head, back, and side. Id. at 7. He additionally testified that, "once I was down I was getting kicked." Id. at 8. According to Barbaryka, he was attacked by multiple people, since he "was getting hit from both sides of my head and punched" all at the same time. Id. at 8-9. He was stabbed three times in the altercation, but does not remember being stabbed.

Id. He sustained cuts to him arm, side and spine. Id. at 9. Barbaryka never saw any of his attackers, and does not know who stabbed him. Id. at 10, 15.

In order to sustain a conviction for aggravated assault, "the Commonwealth does not have to prove that the serious bodily injury was actually inflicted but rather that the [a]ppellant acted with the specific intent to cause such injury." Commonwealth v. Holley, 945 A.2d 241, 247 (Pa. Super. 2008) (citation omitted). We have previously explained the Commonwealth's burden as follows:

> The Commonwealth may prove intent to cause serious bodily injury by circumstantial evidence. In determining whether the Commonwealth proved the [a]ppellant had the requisite specific intent, the fact-finder is free to conclude the accused intended the natural and probable consequences of his actions to result therefrom. A determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis.
>
> An intent is a subjective frame of mind, it is of necessity difficult of direct proof[.] We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances. Moreover, depending on the circumstances even a single punch may be sufficient.

Commonwealth v. Lewis, 911 A.2d 558, 564 (Pa. Super. 2006) (internal citations and quotations omitted). This logic applies "with equal force to prove recklessness to a degree that one would reasonably anticipate serious bodily injury as a likely and logical result" from one's actions. Commonwealth v. Bruce, 916 A.2d 657, 664 (Pa. Super. 2007) (finding "four or five blows to

the face and throat" sufficient for inferring reckless intent to cause serious bodily injury, even in light of "minimal external injury to [victim's] face").

Here, none of the witnesses testified that they saw Basnet with a knife or stab Barbaryka. Thus, there is no direct evidence that Basnet stabbed Barbaryka. Nor did any witness specifically testify that they saw Basnet punching Barbaryka. However, there is ample circumstantial evidence that, even if Basnet was not the stabber, he was one of two individuals that physically assaulted Barbaryka in a sustained beating that included blows to his head.

Basnet and his friend chased Barbaryka and were fighting with him. Basnet was also seen on top of Barbaryka while he was on the ground. Importantly, Barbaryka was punched on both sides of his head simultaneously, indicating that both Basnet and his friend assaulted Barbaryka and intended to cause serious bodily injury. Barbaryka further testified that he sustained multiple hand blows to his head, back, and side, and then sustained kicks from his attackers once he fell to the ground. Moreover, the attack would likely have continued, if not for the fortuitous arrival of Officer Gilkinson. Thus, even if Basnet was not the individual who stabbed Barbaryka, the evidence supports a finding that Basnet actively participated in the assault and "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

Accordingly, we conclude that Basnet's challenge to the sufficiency of the evidence supporting his conviction for aggravated assault lacks merit.[2]

Turning to Basnet's conviction for conspiracy, the Commonwealth must demonstrate that the defendant: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." Commonwealth v. Rios, 684 A.2d 1025, 1030 (Pa. 1996); see also 18 Pa.C.S. § 903. Once the conspiracy is established beyond a reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive offense that served as the illicit objective of the conspiracy. Commonwealth v. Miller, 364 A.2d 886, 887 (Pa. 1976).

Proving the existence of such an agreement is not always easy, and is rarely proven with direct evidence. Commonwealth v. Spotz, 552 Pa. 499, 716 A.2d 580, 592 (Pa. 1998). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." Commonwealth v. Strantz, 195 A. 75, 80 (Pa. 1937). Indeed, "[a] conspiracy may be proven inferentially by showing the relation,

_____

[2] We observe that the trial court found Basnet guilty of aggravated assault based on a theory of accomplice liability. See N.T. Trial, 12/4/18, at 23-24. However, we may affirm the trial court's determination on any valid basis appearing of record. See Commonwealth v. Moore, 937 A.2d 1062, 1073 (Pa. 2007).

conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that a criminal confederation has in fact been formed." Commonwealth v. Kennedy, 453 A.2d 927, 929, 930 (Pa. 1982). As our Supreme Court has explained:

> [D]irect evidence of the formation of a conspiratorial agreement is rare, and often must be derived from the facts and circumstances of each case. The agreement need not be formal, nor must it even be expressly communicated. It can be established instantaneously, or it can be the product of drawn-out deliberations. By way of example, in the context of multi-person fights, two participants can form a conspiracy to assault another person by discussing at length a plan to assault that person, or, alternatively, those same individuals can form the illicit agreement by mere nodding of heads, so long as they possess the requisite intent.

Commonwealth v. Chambers, 188 A.3d 400, 411 (Pa. 2018).

With these principles in mind, we turn to the facts of the case before us. We consider, in the light most favorable to the Commonwealth, whether Basnet and his friend who accompanied him into the bar earlier in the evening conspired to assault Barbaryka, or whether they assaulted him spontaneously. Id. Under our deferential standard of review, we conclude that the evidence was sufficient to prove that such a conspiracy existed.

Here, the evidence established that, when Basnet and his friend were in Diamond Jim's, Basnet said something derogatory to Jenesky. Shortly thereafter, Cole told Basnet and his friend to leave the bar. They refused to comply with Cole's directive. Barbaryka and Jenesky then injected themselves into the situation by telling Basnet and his friend to leave. When they did not

do so, Cole had to physically push them out the door and lock it. Basnet and his friend did not leave the bar at that point. Instead, they stayed outside and displayed their anger at being kicked out of the bar by repeatedly kicking the bar door. They refused to stop kicking the door even though Cole told them to stop on two occasions.

After Cole kicked Basnet and his friend out of the bar, Cole saw Basnet talking on the phone. A short time later, when Barbaryka and Jenesky left the bar, Basnet, his friend, and three others were outside the door waiting for them. Basnet and his four cohorts immediately chased and assaulted both Barbaryka and Jenesky. Basnet and the friend from the bar, chased and attacked Barbaryka, delivering blows to both sides of his head simultaneously, hitting him in the back, and side, and kicking him when he was on the ground. From this evidence, the finder of fact could infer that Basnet and his friend were angry at Barbaryka and Jenesky, that Basnet summoned three additional men by phone, and that the five of them conspired to physically attack Barbaryka and Jenesky when they emerged from Diamond Jim's. Accordingly, Basnet's sufficiency challenge to the conspiracy conviction warrants no relief.

In his final claim, Basnet contends that the verdict is against the weight of the evidence. Our standard of review of a challenge to the weight of the evidence is well-settled:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an

> appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Widmer, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted). This Court may not substitute its judgment for that of the fact-finder as to credibility issues or the weight to be given to evidence. Commonwealth v. Furness, 153 A.3d 397, 404 (Pa. Super. 2016). This standard applies even when the trial judge rendered the verdict at issue as the finder of fact. See, e.g., Commonwealth v. Konias, 136 A.3d 1014, 1023 (Pa. Super. 2016) (applying the above standards to a weight challenge following a bench trial).

Further, a challenge to the weight of the evidence concedes that sufficient evidence supports the verdict. Widmer, 744 A.2d at 751. Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." Commonwealth v. Talbert, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

Basnet argues that the verdict was against the weight of the evidence because Officer Gilkinson indicated in his police report that Cole and Jenesky stated that they did not witness what occurred outside when Barbaryka was involved in a fight. Basnet asserts that their initial statements to police are inconsistent with their trial testimony, where they both identified Basnet as one of the men fighting with Barbaryka. Basnet also claims that Cole and Jenesky provided inconsistent trial testimony as to who escorted Basnet out of the bar, whether Basnet made comments to Barbaryka, and the sequence of events surrounding the kicking of the door. On this basis, he claims that their testimony is wholly unreliable. He additionally claims that, because Barbaryka and Jenesky were drinking on the night in question, it is "highly likely that both of them were highly intoxicated during the episode." Basnet's Brief at 26. Basnet contends that the Commonwealth failed to produce any evidence that he stabbed Barbaryka, or that Basnet ever had knife, gave another a knife, or knew that someone else had a knife. For these reasons, he claims that the verdict is against the weight of the evidence.

In the instant matter, a non-jury trial was conducted before the Honorable Donna Jo McDaniel, who sat as the trier of fact. Judge McDaniel retired shortly after the trial, and the case was transferred to the Honorable Thomas Flaherty. Judge Flaherty considered and denied Basnet's post-sentence motions, including his challenge to the weight of the evidence. In

his Pa.R.A.P. 1925(a) opinion, Judge Flaherty explained the basis for denying

relief on that claim, as follows:

> [Basnet] claims that Mr. Jenesky and Ms. Cole's initial statements to Officer Gilkinson [were] in "stark contrast" to their trial testimonies. A review of the facts in this case shows that, these inconsistencies are minor, and not to a degree that shock[s] the conscious; therefore reliance on these statements is not grounds for a new trial. Commonwealth v. Jacoby, 170 A.3d 1065 (Pa. 2017) (inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of evidence); Commonwealth v. Talbert, 129 A.3d 536 (Pa. Super. 2015) (establishing that in order to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the consciousness of the court). Although Officer Gilkinson's police report stated that "neither Jenesky or [sic] [Ms.] Cole witnessed what happened outside," ([N.T. Trial,] 12/4/2018 p. 18), this statement is not outrageously different from Cole's testimony that she first heard commotion outside, and then went to see what was happening.
>
> Furthermore, the fact-finder, Judge McDaniel, was free to believe all or part of Cole and Jenesky's testimonies. Judge McDaniel was well within her discretion when she found both witnesses to be credible, and to believe their trial testimony. This Court has reviewed the trial transcript and cannot find facts that are of such greater weight that to ignore them would deny justice.

Pa.R.A.P. 1925(a) Opinion, 7/15/19, at 6-7 (unnumbered).

We discern no abuse of discretion by Judge Flaherty in rejecting Basnet's

challenge to the weight of the evidence supporting his convictions for

aggravated assault and conspiracy. Cole and Jenesky were cross-examined

at trial regarding the contents of the police report, and the alleged

inconsistencies between their initial statements and their trial testimony.

Judge McDaniel, sitting as the trier of fact, was free to believe all, part or none

of their testimony.  See, e.g., Commonwealth v. Greenlee, 212 A.3d 1038, 1042 (Pa. Super 2019).  After reviewing all the evidence, Judge McDaniel found that the credible evidence established that Basnet was guilty of aggravated assault and conspiracy.  Judge Flaherty exercised his discretion in finding that Judge McDaniel's verdict was not so contrary to the evidence as to shock the conscience of the court.  As we discern no abuse of discretion by Judge Flaherty, Basnet's final claim warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/30/2020