J-S11018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAISHA LESETTE SANTIAGO | : | |
| | : | |
| Appellant | : | No. 636 WDA 2020 |

Appeal from the Judgment of Sentence Entered August 9, 2018,
in the Court of Common Pleas of Erie County,
Criminal Division at No(s): CP-25-CR-0002661-2017.

BEFORE: STABILE, J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY KUNSELMAN, J.: **FILED: June 14, 2021**

Taisha Lesette Santiago appeals from the judgment of sentence imposed after a jury convicted her of second-degree-murder, conspiracy to commit robbery, and two counts of recklessly endangering another person ("REAP").[1] After careful review, we affirm.

The trial court set forth the relevant factual and procedural history as follows:

On June 29, 2017, [Santiago], and two co-defendants, Jalen Reynolds and Lashonda Dade, conspired to rob two individuals, David Tate and Rashaad Jones. [Santiago] set up a meeting with the victims, Tate and Jones, ostensibly to arrange a sexual encounter between [Santiago], the two victims and a female. [Santiago] arranged for Tate and Jones to pick her up at her house

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(b), 903, 3701(a)(1)(iii), 2705.

with the plan of taking her and a female back to Jones' residence at 1341/1343 East 20th Street, Erie, Pennsylvania.

In the meantime, co-defendant Dade, with co-defendant Reynolds as a passenger, drove to Jones' residence, parked outside and waited for [Santiago]'s instructions via cell phone. Tate and Jones exited Jones' residence and drove away to pick up [Santiago]. After Tate and Jones left, Reynolds received a communication from [Santiago], exited Dade's parked vehicle and stationed himself outside Jones' residence. Dade remained inside the vehicle. Another assailant, David Dalton, arrived and positioned himself on Jones' front porch.

Shortly thereafter, Tate and Jones returned to Jones' residence with [Santiago] and exited Jones' vehicle. Jones walked up to his front porch where he encountered Dalton. A struggle between Jones and Dalton ensued. Reynolds, who was waiting outside the residence, shot and killed Tate on the sidewalk. Jones was shot multiple times. Though Jones survived, he underwent multiple surgeries from the incident and remains symptomatic from his injuries.

After a five-day jury trial in June 2018, [Santiago] was found guilty of criminal homicide/murder in the second degree, criminal conspiracy/robbery (felony, first degree), and two counts of [REAP]. [Santiago's liability for second-degree-murder was based on her conviction for conspiracy to commit robbery.]

Trial Court Opinion, 8/21/19, at 1-2 (citations, footnotes, and unnecessary capitalization omitted).

On August 9, 2018, the trial court imposed an aggregate sentence of life in prison without the possibility of parole, followed by five to ten years of imprisonment and two years of probation. Santiago did not file a post-sentence motion. Santiago filed a timely notice of appeal challenging the sufficiency of the evidence supporting each conviction. Both Santiago and the trial court complied with Pa.R.A.P. 1925.

Our standard and scope of review for a sufficiency challenge is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (citations omitted).

In order to establish murder of the second degree, the Commonwealth must prove that a criminal homicide occurred while the appellant was engaged as a principal or an accomplice in the perpetration of a felony. *See* 18 Pa.C.S.A. 2502(b). In the present case, the felony in question is conspiracy to commit robbery. A person is guilty of conspiracy to commit a robbery, as an accomplice or co-conspirator, "as long as the defendant possessed the requisite *mens rea* to commit the criminal act and the additional elements of

accomplice liability or conspiratorial liability are established." *Commonwealth v. Mitchell*, 135 A.3d 1097, 1102 (Pa. Super. Ct. 2016). Relevant here, a robbery occurs during the commission of a theft when a person, "(i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; (iii) commits or threatens immediately to commit any felony of the first or second degree." 18 Pa.C.S. § 3701(i)-(iii). While Santiago does not dispute that a murder and a robbery occurred, she challenges the sufficiency of the evidence supporting the Commonwealth's theory that she conspired to commit a robbery.

In order to convict a defendant of criminal conspiracy, the Commonwealth must establish that: "(1) [he] entered into an agreement to commit or aid in the commission of a crime; (2) he shared the criminal intent with that other person; and (3) an overt act was committed in furtherance of the conspiracy." *Commonwealth v. Knox*, 50 A.3d 749, 755 (Pa. Super. 2012) (citation omitted). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Id.*

We have further explained:

> As conspiracy by its nature is often difficult to prove due to the absence of direct evidence, cases examining the sufficiency of the evidence often look to the conduct of the parties and the circumstances surrounding their conduct which may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.
>
> Among the circumstances which are relevant, but not sufficient by themselves, to prove a [criminal] confederation

are: (1) an association between alleged coconspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

Other circumstances which are relevant include post-crime conduct, such as flight, because it tends to establish consciousness of guilt. When combined with other direct or circumstantial evidence, that conduct may provide sufficient evidence to establish a conspiracy.

*Commonwealth v. Jordan*, 212 A.3d 91, 97 (Pa. Super. Ct. 2019) (quotation marks, citations, and unnecessary capitalizations omitted.)

Our Supreme Court established that one can be found criminally liable for another's conduct, "where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy." *Commonwealth v. Fisher*, 80 A.3d 1186 (Pa. 2013). Our Supreme Court also held that a "defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor." *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004) (citing 18 Pa.C.S.A. § 306). If an accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or

committing that offense, that accomplice is equally criminally liable for the acts of another. ***Commonwealth v. Spotz***, 716 A.2d 580 (Pa. 1998).

Santiago asserts that the Commonwealth failed to present sufficient evidence and testimony that she had actual knowledge that a robbery was going to occur and/or participated in the perpetration of a robbery. Santiago's Brief at 9. Santiago argues that a defendant can only be guilty of murder in the second degree from a conspiracy, "where they are the plotter and actual leader of the robbery during which a killing occurred, even if the actual killing was done by an accomplice." ***Id***. (quoting ***Commonwealth v. Melton***, 178 A.2d 728 (Pa. 1962)).

The trial court held that Santiago's sufficiency of the evidence claims regarding the conviction of murder of the second degree conspiracy to commit a robbery is without merit. The evidence established beyond a reasonable doubt the elements of second-degree murder; that Santiago, intentionally, knowingly, recklessly, or negligently caused the death of Tate at 1341/1343 East 20th Street, Erie, Pennsylvania by her complicity in setting up the meeting with Jones and Tate and the robbery of Jones which culminated in the murder of Tate. Trial Court Opinion, 8/21/2019, at 20. The trial court reasoned that:

> A homicide occurred while [Santiago] was engaged as a principal or an accomplice in the commission of a felony robbery. [Santiago] attempted to set up an encounter with Jones on June 27, 2018, and succeeded in setting up an encounter with Jones and Tate on June 28-29, 2018. [Santiago] communicated to Reynolds her conversation with Jones about the anticipated encounter. [Santiago] texted Reynolds plans to set up Jones and

provided Reynolds with Jones' address. The record establishes [Santiago]'s course of conduct continued on June 28th, as she continued to text Reynolds about the proposed robbery of Jones. The developing plans included [Santiago]'s instruction to Reynolds to rob Jones' residence during Jones' absence. Reynolds' texts to [Santiago] instructing her to inform Jones to pick her up corresponded with [Santiago]'s messages to Jones to pick her up. [Santiago] went so far as to send Reynolds a photo of Jones to enable Reynolds to identify Jones as the target. In the hour preceding Tate's murder, [Santiago] and Reynolds exchanged a dozen phone calls. When the police arrived on the scene, Jones told officers [Santiago] "set him up." [Santiago] admitted she was present when the shooting occurred and she knew Reynolds and Dade. After the homicide, [Santiago] attempted to communicate further with Reynolds and Dade as they were taken into custody.

The evidence sufficiently established Reynolds committed an armed robbery planned with [Santiago] during which Tate was killed. Immediately after the shots were fired, a neighbor saw a sedan go west. Minutes later, police officers observed the sedan a few blocks from where the murder occurred. When the officers stopped and approached the vehicle, Reynolds was "sweating profusely" even though it was 68 degrees and breezy. Reynolds' identification and his sweatshirt containing disposable gloves bearing his DNA were recovered from the vehicle.

The record established Dade drove Reynolds to the robbery site, Jones' residence. Reynolds and Dade waited in the car as [Santiago] arranged for Jones and Tate to leave Jones' residence to pick her up. Reynolds and [Santiago] were in communication as [Santiago] waited to be picked up, and as [Santiago], Jones and Tate made their way back to Jones' residence. Dade testified Reynolds exited the vehicle and approached Jones' residence. Seconds after the victims arrived, Dade and neighbors heard gunshots. Reynolds returned to the car and admitted to Dade he thought he killed both Jones and Tate.

* * * *

The evidence viewed in the light most favorable to the Commonwealth, together with all reasonable inferences from the evidence, established beyond a reasonable doubt the elements of conspiracy/robbery. The foregoing testimony clearly proved [Santiago], with the intent of promoting or facilitating the commission of a robbery, agreed with Reynolds and/or Dade to

engage in conduct which constituted a robbery or an attempt or solicitation to commit a robbery, and in furtherance thereof, set up a meeting to initiate a planned robbery of Tate and/or Jones at Jones' residence. As discussed herein, there was sufficient evidence for the jury to conclude [Santiago] agreed with Reynolds to engage in conduct which constituted a robbery or an attempt or solicitation to commit robbery. The jury reasonably concluded the elements of the crime were met. The evidence was sufficient to convict [Santiago] of conspiracy/robbery. This claim is meritless.

Trial Court Opinion, 8/21/19, at 21-22 (citations and unnecessary capitalization omitted).

We agree with the trial court that the evidence was sufficient to convict Santiago of second-degree murder and conspiracy to commit robbery. Santiago agreed with Reynolds to rob Jones and Tate. In furtherance of this crime, Santiago contacted Reynolds to inform him of her location and when she would arrive with the victims. Reynolds and Dade arrived at the scene and hid, awaiting the arrival of Santiago with the victims. Santiago also lured Jones to take her to his residence, where the planned robbery was to occur.

Santiago's claims to the contrary are meritless. Santiago relies on **Commonwealth v. Melton**, 178 A.2d 728 (Pa. 1962) and asserts that "the Commonwealth failed to present evidence and testimony that would prove that the Appellant was either the plotter and/or the actual leader of the robbery that took place." Santiago's brief at 9. However, Jones had stated to Officer Behr that Santiago had "set him up for a little bit of weed." N.T. Trial, Day 1 at 130. Thus, the Commonwealth presented evidence to refute Santiago's claim that she was not involved in this robbery. The jury was free

to believe this evidence. Her claim of sufficiency regarding the robbery and conspiracy convictions therefore fails.

Santiago also challenges the sufficiency of the evidence for her REAP convictions. Again, she claims she lacked the requisite state of mind for this crime. A person commits REAP, a misdemeanor of the second degree, "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. The relevant *mens rea*, to prove REAP, "is a conscious disregard of a known risk of death or great bodily harm to another person." ***Commonwealth v. Merrttacelli***, 54 A.3d 940, 950 (Pa. Super. 2012).

> The trial court found the evidence sufficient. The testimony here,
>
> clearly proved [Santiago] recklessly engaged in conduct placing Jones and Tate in danger of death or serious bodily injury in setting up a planned armed robbery of Jones during which Tate and Jones were shot. Tate died at the scene from one of the gunshot wounds. Jones sustained serious and permanent injuries from the gunshot wounds inflicted upon him during the incident. [Santiago] consciously disregarded a known risk of death or great bodily harm to Tate and Jones through her complicity with Reynolds in planning the robbery.
> The jury reasonably concluded the elements of this crime were met. The evidence was sufficient to convict [Santiago] of both counts of [REAP].

***Id.*** at 22 (citations and unnecessary capitalization omitted).

We agree the Commonwealth produced sufficient evidence to show Santiago acted with conscious disregard when she placed Jones and Tate in danger of death or bodily harm. Thus, this claim also fails.

In sum, because the evidence was sufficient to establish that Santiago committed the crimes for which she was convicted, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/14/2021