**[J-56-2019] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| BERT HUDSON, | : | No. 17 WAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered May |
| | : | 29, 2018 at No. 444 MD 2017. |
| v. | : | |
| | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION & PAROLE, | : | SUBMITTED: MARCH 21, 2019 |
| | : | |
| Appellee | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                        **DECIDED: MARCH 26, 2019**

This appeal requires the Court to interpret various statutory provisions in order to ascertain whether, in the absence of a direct legislative statement, the General Assembly intended that a person convicted of, and sentenced for, second-degree murder[1] would be eligible for parole. In part, the learned Majority resolves this question through a plain language analysis of 61 Pa.C.S § 6137. *See* Maj. Op. at 10-11. I join that aspect of the Majority's opinion, and I join in the Court's ultimate disposition. I write separately because my interpretation of one of the other statutes implicated in this case differs slightly from that of the Majority.

In matters of statutory interpretation, our objective is to ascertain and effectuate the General Assembly's intent. 1 Pa.C.S. § 1921(a). "In discerning that intent, the court first resorts to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent

---

[1]     18 Pa.C.S. § 2502(b).

to the case at hand and not look beyond the statutory language to ascertain its meaning." *In re L.B.M.*, 161 A.3d 172, 179 (Pa. 2017) (quoting *Mohamed v. Commonwealth, Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1193 (Pa. 2012)). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

In this case, the plain and unambiguous language that the General Assembly expressed in subsection 6137(a) is dispositive. Our Crimes Code mandates that any person convicted of second-degree murder be sentenced "to a term of life imprisonment." 18 Pa.C.S. § 1102(b). Subsection 6137(a) affords the parole board the discretion to release any inmate on parole "except an inmate condemned to death or serving life imprisonment." 61 Pa.C.S. § 6137(a)(1). The General Assembly's use of the term "life imprisonment" in both of these provisions indicates, plainly and unambiguously, that it intended to ensure that those convicted of second-degree murder are never to be released on parole. This unequivocal expression of legislative will is all that is necessary to resolve the issue before the Court today.

This is so regardless of what we can glean from a survey of other statutory provisions that might be relevant to this issue, particularly inasmuch as the meaning and effect of those other provisions are unclear. Allow me to explain. Put aside subsection 6137(b)(1) for the moment; what remains are statutory provisions that create something of a stalemate, with some provisions militating in favor of Hudson's claim that parole eligibility for a second-degree murderer not only is possible, but is required, while other provisions foreclose even the possibility of parole. There are instances in our Crimes Code in which the General Assembly has specified that a life sentence means "life without parole," but others in which the General Assembly did not include the "without parole" language, a circumstance which supports the argument that, when the General Assembly

specifically intended for a life sentence to be one in which parole is not an option, it said so explicitly. One such example is Pennsylvania's Three Strikes Law, in which the General Assembly has instructed that, if a person has committed three or more violent crimes, and twenty-five years in prison is insufficient to protect the safety of the public, a trial court may sentence the offender to "life imprisonment *without parole*." 42 Pa.C.S. § 9714(a)(2) (emphasis added). Another example lies in the sentencing provision for arson resulting in death, which is a form of second-degree murder. The General Assembly prescribed the punishment for second-degree murder predicated upon arson as "life imprisonment *without right to parole*." 18 Pa.C.S. § 3301(b)(1) (emphasis added). As arson already is a predicate crime for second-degree murder, *see* 18 Pa.C.S. § 2502(d) (defining "perpetration of a felony" as including "robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping"), and as all other predicates are subject only to "life imprisonment," it is at least reasonable to infer that the General Assembly intended to differentiate between the predicate crimes for second-degree murder. *See Commonwealth v. Spotz*, 716 A.2d 580, 590 (Pa. 1998) (explaining that the "fundamental maxim of statutory construction, '*expresio unius est exclusio alterius*,' stands for the principle that the mention of one thing in a statute implies the exclusion of others not expressed.").

The strongest evidence that the General Assembly intended that second-degree murderers be eligible for parole can be found in the version of 42 Pa.C.S. § 9756 that was in effect at the time Hudson was sentenced. As the Majority notes, in that provision, the General Assembly expressly omitted "only" four categories of offenders from parole eligibility: (1) those convicted of first-degree murder; (2) individuals sentenced for summary offenses; (3) persons incarcerated for nonpayment of fines or costs; and (4) offenders whose sentences do not exceed thirty days in jail. *Id.* § 9756(c) (1974). The

Majority acknowledges that the language of this statute is "somewhat confounding, as it does seem to imply that," a sentencing court must set a parole date in every instance except the four enumerated categorical exceptions. *See* Maj. Op. at 9. Disregarding this clear legislative directive that "only" those four categories are exempted from the general "right to parole," 42 Pa.C.S. § 9756(c) (1974),[2] the Majority maintains instead that the General Assembly "never intended specifically to create a personal right to be reviewed for parole." Maj. Op. at 10. Rather, the Majority reasons, the provision was "meant to direct common pleas courts in discharging their sentencing obligations." *Id.* For the Majority, this means that the trial court here "settled on the concept that, in view of the mandatory nature of the life sentence associated with [Hudson's] offense," the court had no choice but to impose a sentence of life without parole. *Id.* I disagree respectfully with the Majority's interpretive approach. As noted, our first obligation is to give effect to the words that the General Assembly actually used. In subsection 9756(c), the General Assembly unambiguously limited a sentencing court's ability to sentence a person without the "right to parole" to four distinct categories of offenders. Second-degree murderers do not fall within one of the four categories. Thus, at least at this juncture in the interpretive process, subsection 9756(c) weighs strongly in Hudson's favor.

However, other compelling considerations militate against parole eligibility for second-degree murderers. Subsection 9756(b)(1) governs how sentencing courts must calculate an offender's minimum sentence. That provision mandates that a minimum sentence "shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S. §

---

[2] The present version of subsection 9756(c) does not include first-degree murder as one of the categories of crimes automatically excluded from parole eligibility. The other three excluded categories remain. *See* 42 Pa.C.S. § 9756(c). Of course, removing first-degree murder from subsection 9756(c) does not mean that the crime is one that carries with it the possibility of parole. Like second-degree murder, first-degree murder, for which a person is sentenced to life imprisonment upon conviction (or death), is governed by the prohibition on release in subsection 6137(a)(1).

9756(b)(1). If, as subsection 9756(c) seemingly requires, a second-degree murderer is entitled to a parole eligibility date, subsection 9756(b)(1) renders a sentencing court's obligation to set such a date "impossible of execution." *See* 1 Pa.C.S. § 1922(1). As the Majority explains, because no court can know when a life term will end, no court can set an eligibility date that complies with the terms of subsection 9756(b)(1). *See* Maj. Op. at 7. Hence, the result is a statutory stalemate, with one provision requiring a court to act while, at the same time, another provision in the same statute makes it impossible for the court to perform that very act.

These conflicting provisions illustrate the difficulty in ascertaining the General Assembly's intent with regard to the question at bar in this case, absent consideration of subsection 6137(a)(1). There is reason to believe that the General Assembly intended a right of parole for those convicted of second-degree murder, at least as to those whose convictions were not arson-related, while, at the same time, there is reason to believe that the General Assembly did not so intend. Ultimately, however, we need not determine definitively the relevance or impact of any section other than subsection 6137(a)(1). Only that provision matters for purposes of our disposition here. Its clear and unambiguous language expressly prohibits the parole board from releasing anyone serving a sentence of "life imprisonment." Anyone sentenced to second-degree murder is serving such a sentence, and is not entitled to release at any time. For this reason, attempts to untangle the knots created by the other statutory provisions are both futile and unnecessary, as no resolution of those conundrums would result in Hudson's, or any other second-degree murderer's, release.

To the extent that today's resolution is not in accord with the General Assembly's actual intent, the onus falls upon our lawmakers to correct any misinterpretation through the enactment of legislation. In the absence of such statutory clarification, our rules of

statutory construction compel reliance upon the plain language of subsection 6137(a)(1) alone.

Justice Donohue joins this concurring opinion.