J-A02012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARL DUPREE DUNCAN | : | |
| | : | |
| Appellant | : | No. 124 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 5, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001596-2023

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: September 12, 2025**

Carl Duncan appeals from the judgment of sentence imposed after a jury found him guilty of possession with intent to deliver ("PWID") and criminal conspiracy to commit PWID[1].  Originally, Duncan's appellate counsel filed a motion to withdraw as counsel and a brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967).  Counsel identified three issues that she believed had no merit, namely: that  trial counsel was ineffective during jury selection; the trial court erroneously denied him the right to self-representation; and the verdict was against the weight of the evidence.  Upon review, we identified two other non-frivolous issues concerning the sufficiency of the evidence regarding Duncan's convictions.  Therefore, we denied counsel's petition and remanded with instructions for counsel to address those issues either by filing

_____

[1] 35 P.S. §§ 780-113(a)(30) and 18 Pa.C.S.A. § 903(a)(1).

an advocate's brief or another **Anders** brief. Counsel complied by filing an advocate's brief. Upon review of the arguments, we now affirm.

The underlying facts of this case are as follows. On May 6, 2023, a Pennsylvania State Police strike force intercepted a suspicious package at a shipping facility in Erie County. A K-9 sniffed the package and identified it as positive for narcotics. Law enforcement obtained a search warrant allowing them to open the package. Inside was a guitar amplifier, but its weight was unusual, and it had tool markings on it. The officers opened the amplifier and found 6 kilograms of cocaine.

The officers then reassembled the package with sham material and a tracking device and delivered it to 330 East 23rd Street, Erie, Pennsylvania, as addressed. Following delivery to this address, the officers saw a female neighbor pick up the package from the residence and then make a phone call. Approximately twenty minutes later, they saw a black Mercedes SUV circle the block, slow down, and then stop at the address. A man with a headband got out of the vehicle and met the woman; he took the package from her and left with it.

The officers followed the Mercedes to the Courtyard Marriott hotel where a man with red sweatpants came to the Mercedes with a luggage cart, unloaded the package, and took it into the hotel. An officer stopped the Mercedes, which Duncan was driving, while another officer stopped the other man, Montez Freeland, who had taken the package into the hotel.

The officers learned that Duncan and Freeland had traveled from Atlanta to Pennsylvania together; they searched the room where Freeland was staying. There, they found business cards and other documents with Duncan's name on them, a bag of Duncan's teeth, along with a scale, food sealer, and repackaging material. They also found another box of the same type as the one with the cocaine, which had Duncan's name and the 23rd Street Erie address on it. Similarly, it contained a speaker with a hidden compartment and a vacuum sealed package of approximately $50,000 cash in it. Police arrested Duncan and charged him with the above crimes.

The case was scheduled for a jury trial. During jury selection on October 17, 2023, Duncan informed the trial court that he wished to represent himself. After the trial court conducted a colloquy and questioned Duncan, the court denied his request. The case proceeded to trial, and the jury found Duncan guilty of both charges.

On January 5, 2024, the trial court sentenced Duncan to an aggregate sentence of 60 to 120 months' incarceration. Duncan did not file a post-sentence motion at that time.

Duncan filed a timely appeal.[2] As noted above, we originally remanded the case because we identified two issues of arguable merit. One of the issues

---

[2] On appeal, trial counsel failed to adhere to this Court's orders directing him to file a docketing statement and explain Duncan's *pro se* notice of appeal filed at another docket number. Consequently, we determined that prior counsel abandoned Duncan and remanded the matter for a ***Grazier*** hearing, which the trial court conducted and appointed new counsel.

Duncan's counsel identified challenged the weight of the evidence. However, our independent review revealed that Duncan actually wanted to challenge the sufficiency of the evidence against him. As we noted in our first memorandum, the two concepts are distinct. A weight claim concedes that there is sufficient evidence, but that some facts so outweigh the others that to ignore them or accord them equal weight would be a miscarriage of justice. ***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000). By contrast, a sufficiency claim challenges the evidence to support the elements of each crime.

We noted that trial counsel questioned sufficiency when making an oral motion for judgment of acquittal at sentencing. Counsel essentially argued that the evidence was insufficient to establish that Duncan possessed the cocaine, versus attempted to possess, because the drugs were confiscated by the police and replaced with sham material before they reached Duncan.[3] However, the Commonwealth only charged Duncan with PWID and conspiracy to PWID. N.T., 1/5/24, at 12-13. In response to the oral motion, the court suggested that counsel file a post-sentence motion to address the matter, but counsel did not.

---

[3] We also note that the fact that the box Duncan received contained sham material, and the way Duncan was charged, was the topic of some discussion and research after the jury asked, "are cocaine and sham considered the same in the law." N.T., 10/18/23, at 50-53.

Additionally, Duncan filed a *pro se* motion for arrest of judgment on January 22, 2024, claiming he had "a right to challenge evidence."[4]  Although this motion was untimely filed, and was also a nullity, because Duncan was represented by counsel at the time, the motion again suggested that Duncan wanted to challenge the sufficiency of the evidence.

Because appellate counsel did not consider or address a sufficiency of the evidence claim regarding either the PWID or conspiracy convictions, we denied counsel's motion to withdraw.  As noted above, we remanded and directed counsel to address both sufficiency issues.

Following remand, counsel filed an advocate's brief, raising the two issues we identified:[5]

> Was the evidence in this case insufficient to support the charge of manufacture, delivery, or possession with intent to manufacture or deliver?
>
> Was evidence in this case insufficient to support the charge of conspiracy to manufacture, delivery, or possession with intent to manufacture or deliver?

Duncan's Brief at 2.

---

[4] A motion for an arrest of judgment concerns the sufficiency of the evidence. ***Commonwealth v. Chambers***, 310 A.3d 76, 89 (Pa. 2024); ***Commonwealth v. Marquez***, 980 A.2d 145, 48 (Pa. Super. 2009) (*en banc*).

[5] The Commonwealth also filed a new brief on which it asserted it established all elements of the crimes at issue.

Both of Duncan's issues challenge the sufficiency of the evidence. The appellate standard of review for sufficiency of the evidence is *de novo* and our scope of review is plenary. ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011).

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013).

The Controlled Substances Act provides that a person can be charged with possession with intent to deliver when **with the "intent to** manufacture or **deliver," they possess** "a controlled substance" or **a "counterfeit controlled substance**." 35 P.S. §780-113(a)(30) (emphasis added). The Commonwealth may prove the essential elements of the crime of possession with intent to deliver wholly by circumstantial evidence; the court looks to all facts and circumstances in each case surrounding the possession of the controlled substance. ***Commonwealth v. Ratsamy***, 934 A.2d 123 (Pa. 2007).

In his first issue, Duncan argues that the Commonwealth "failed to connect [him] to any manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance or counterfeit controlled substance." Duncan's Brief at 6. Duncan contends that "the evidence in this

- 6 -

case proved only that substances were packaged discreetly, mailed to an address, and then gathered up by an individual and brought directly to another individual by him." *Id.* at 6-7. Once Duncan received the package in question, the cocaine was gone, and sham materials were placed in the package. Because of this, Ducan argues that there was no evidence that he knew what was in the package and there was no cocaine in the amplifier at any time when he possessed the package. Thus, Duncan concludes, there was no possession of cocaine.

To support his argument, Duncan relies on our decision in *Commonwealth v. Parrish*, 191 A.3d 31, 36-38 (Pa. Super. 2018), appeal denied 202 A.3d 42 (Pa. 2019). In that case, after reviewing the evidence, this court concluded the jury could not reasonably infer that the appellant, who was sitting in the back of a vehicle on the driver's side, had any knowledge of the contraband in the bag located in the front row of the vehicle, let alone exercise dominion and control over its contents. *Id.* at 37. There, the police located all the contraband in the front part of the car. "In particular, the police found the black satchel containing contraband on the passenger-side floor of the front of the vehicle, the gun under the front passenger-side seat, and marijuana on the front passenger door." *Id.* "Moreover, the evidence also established that [the a]ppellant was not carrying any type of bag when he entered the car; he did not have keys to the car, and was not the owner or operator of it." *Id*. at 37-38. "There [was] no evidence that [the a]ppellant had ever been seated in either of the car's front seats. Neither of the

recovered firearms was registered to him and there was no fingerprint evidence for either weapon." *Id.* at 38.

We conclude that *Parrish* is readily distinguishable from the facts of this case. Here, Officer J.C. Matson testified that he alongside Officers Brad Wolak and Shawn Panchik investigated a suspicious package to which six kilograms of cocaine were concealed. N.T., 10/17/23 at 77-78. The cocaine was then replaced with a counterfeit controlled substance and was delivered to 330 East 23rd Street. *Id.* at 99-101. Officer Matson stated that, while he on surveillance of this location, he spotted the black SUV that Duncan was driving take a loop around the block before slowing down in front of the residence. *Id.* at 87. Duncan then took this package and delivered it to Freeland at the Marriott Hotel. There, the police found $50,000 along with vacuum sealed bags and a scale. *Id.* at 83-84.

Drawing all reasonable inferences in favor of the Commonwealth, the evidence was sufficient to prove PWID beyond a reasonable doubt. A jury could reasonably conclude that because Duncan circled the block as a counter-surveillance measure, he knew that the package he was delivering contained what he believed was cocaine. Duncan then took this package and delivered it to Freeland, who had all the necessary tools to break down the cocaine and repackage it for distribution. Also, the hotel room contained Duncan's belongings and a similar package addressed to him at the same Erie residence where the subject package was intercepted. It also contained a scale, a large amount of cash, and other drug repackaging materials.

Moreover, Duncan's argument that he never possessed actual cocaine is misplaced. As he noted in his brief, the criminal statute for Possession With Intent to Deliver also covers counterfeit controlled substances like those the police used here. *See* 35 P.S. § 780-113(a)(30). The evidence supports the conviction for PWID. Thus, Duncan's first sufficiency challenge fails.

In his second issue, Duncan challenges the sufficiency of the evidence to sustain his conviction for criminal conspiracy. He argues that the Commonwealth presented no evidence that Duncan agreed with any person to engage in criminal conduct. "Absolutely no proof was presented to the jury that [he] was aware of what was in the package that was intercepted by law enforcement . . . [and] no evidence that [he] spoke to any other individual about this transaction other than picking up a box and taking it to another person, a favor for a friend." Duncan's Brief at 10. Duncan states that the only evidence of a connection between him and Freeland was that his teeth and business cards were in Freeland's hotel room, and that he was driving Freeland's car when he was asked to pick up the package. *Id.* at 11. This evidence alone, according to Duncan, does not prove any agreement between the two men, "a necessary element of conspiracy." *Id.*

The Pennsylvania Crimes Code provides that a person commits criminal conspiracy when he "agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a)(1). With respect to conspiracy to possession with intent to deliver, this crime is

most often proven by circumstantial evidence. *Commonwealth v. Spotz*, 716 A.2d 580, 592 (Pa. 1998).

Viewed in the light most favorable to the Commonwealth, we find the evidence was sufficient to convict Duncan of conspiracy to PWID. Here, there were several items showing Duncan had been inside of the hotel room where all the drugs, cash and packaging materials were found. N.T., 10/17/23, at 84. The items included a business card, a similar package to the one delivered with Duncan's name and the same Erie address, Duncan's teeth, and a payment stub with Duncan's name on it. *Id.* at 85, 115. Drawing all reasonable inferences in favor of the Commonwealth, all these items placed Duncan in the room. Moreover, Duncan was driving Freeland's vehicle and the two traveled to Pennsylvania together from Atlanta. Duncan also circled the block before stopping at the residence, showing he knew the package he was "asked to pick up" contained drugs. The totality of this evidence supports the conclusion that Duncan not only had been in the room with Freeland, but that he conspired with Freeland to deliver and package the drugs. Duncan's second sufficiency challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

9/12/2025